[No. 19140. In Bank.—September 13, 1894.]

GEORGE W. DAW, RESPONDENT, v. WILLIAM NILES ET AL., APPELLANTS.

MORTGAGE—ORAL AGREEMENT FOR PAYMENT OF TAXES BY MORTGAGOR—EVIDENCE.—In an action to foreclose a mortgage given to secure a promissory note, evidence of a contemporaneous oral agreement between the parties that the mortgagors should pay the taxes that might be assessed on the mortgage or the indebtedness secured thereby, and which is offered for the purpose of invalidating the written stipulation for interest contained in the note and mortgage, is inadmissible.

APPEAL from a judgment of the Superior Court of Los Angeles County.

The facts are stated in the opinion of the court.

*Minor & Woodward,* and *A. W. Hutton,* for Appellants.

*Albert M. Stephens,* for Respondent.

BEATTY, C. J.—This is an action to foreclose a mortgage given to secure the payment of a promissory note for ten thousand dollars, payable ten years after date, with interest at the rate of seven per cent per annum, and containing a stipulation to the effect that if the interest is not punctually paid the principal and accrued interest shall become immediately due and payable at the option of the holder.

Nearly four years having elapsed after the execution of the note without the payment of any part of the principal or interest, the plaintiff exercised his option to treat the whole amount as immediately due, and sued to foreclose.

The defendants by way of defense to the action allege that at the time of the execution and delivery of the note and mortgage, and as a part of the same transaction and contract, it was agreed between the plaintiff and the makers of the note and mortgage that they, the mortgagors, should and would pay and discharge all taxes and assessments which might be assessed or levied upon said money or mortgage, any thing in said promissory note or mortgage, or either of them, to the contrary notwithstanding. And it is further alleged that said agreement was knowingly made and omitted from said mortgage with the intent to evade the provisions of section 5 of article XIII of the state constitution, and on that ground defendants deny that by their failure to pay the alleged interest on said note the same became or is due or payable. In other words, they take the position that on the facts alleged in their answer no interest can ever become due on the note, and no suit to collect the principal can be commenced short of ten years from its date. This position is undoubtedly sus-

tained by our decision in the recent case of *Burbridge* v. *Lemmert*, 99 Cal. 493, but the. difference between that case and this is that there the agreement to pay the taxes on the mortgagee's interest in the land was in writing, while here it is only claimed to have been by parol, and the question is not as to the sufficiency of the defense as pleaded, but is wholly with respect to the competency of the evidence offered to sustain it.

At the trial one of the defendants and joint makers of the note and mortgage having been called and sworn as a witness on behalf of the defendants, was asked the following question: "Did you and your brother, John B. Niles, have any agreement with the plaintiff with reference to the payment by you and your brother of the taxes to be assessed or levied upon the mortgage set forth in the complaint, or the money secured thereby?" To which the plaintiff objected upon the grounds, among others, that it was incompetent, and that oral evidence was inadmissible for the purpose of contradicting or varying the terms of the note and mortgage, and that no oral agreement could be shown binding the mortgagors to pay the taxes upon the mortgage or upon the money thereby secured. The attorneys for defendants having admitted that there was no agreement in writing respecting the payment of said taxes, the court sustained plaintiff's objection to the question, and also to the further and more formal offer of the defendants to prove the allegations of the answer as above set forth. Thereupon the cause was submitted for decision, and the decree of foreclosure was entered, including a direction to pay to the plaintiff, out of the proceeds of the sale of the mortgaged premises, the principal of the note, with accrued interest, counsel fees, and costs.

The defendants appeal from the judgment upon a record showing the facts as here stated, and the question to be determined is whether the superior court erred in excluding evidence of an oral agreement to pay the taxes on the debt or mortgage.

The appellants do not question the general rule as to the inadmissibility of oral evidence to add to, contradict, or vary a written agreement, but they claim to be within one of the well-understood exceptions to the rule.

Section 1856 of the Code of Civil Procedure states the rule and its exceptions as follows:

" When the terms of an agreement have been reduced to writing by the parties it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

" 1. Where a mistake or imperfection of the writing is put in issue by the pleadings.

" 2. Where the validity of the agreement is a fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in section eighteen hundred and sixty, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term 'agreement' includes deeds and wills, as well as contracts between parties."

The contention of appellants is that the validity of their agreement to pay interest was the fact in dispute; that the parol promise which they offered to prove would have rendered said agreement void, and therefore that their offer came within the second exception to the rule. This conclusion seems to be inevitable if it be true, as the argument assumes, that the alleged parol promise to pay the taxes would have rendered the agreement to pay interest void, and the question, therefore, is narrowed down to this: Does a parol promise by a morgagor to pay the mortgage tax invalidate the written stipulations for interest contained in the note and mortgage? This a very serious question, the decision of which is fraught with the gravest consequences not only to the entire business community, but

more especially to those whose interests or necessities compel them to become borrowers of money. To hold that such a parol promise does invalidate the written agreement is not merely to punish actual transgressions of the supposed prohibition of the constitution; it is to set at large every written agreement by which the payment of money is or shall hereafter be secured. It is to introduce doubt and uncertainty where now is certainty and security; it is to multiply litigation and to make possible infinitely more fraud than it can possibly prevent, and all this for the sake of a more than doubtful advantage to necessitous borrowers. For, since there is no limit imposed either by the laws or constitution of California to the rate of interest that may be exacted by the lender of money, it would seem that any additional risk to which the business of lending is subjected can only result in an increase of the rates of interest.

But the question before us is one of constitutional construction, and must be decided without reference to the *argumentum ab inconvenienti* unless the provision in question is of doubtful or ambiguous import.

Section 5 of article XIII of the constitution reads as follows: "Every contract hereafter made, by which a debtor is obligated to pay any tax or assessment on money loaned, or on any mortgage, deed of trust, or other lien, shall, as to any interest specified therein, and as to such tax or assessment, be null and void.'

The parol promise of the defendants in this case does not come within the literal terms of this provision of the constitution, nor, we think, within that natural and unforced construction of its terms for which they contend. The language of the section is not happily chosen; and, literally taken, involves an absurdity; for it speaks of a contract which obligates the debtor, and is at the same time void. What is evidently meant, however, is a contract which, but for the invalidating effect of this provision, *would obligate* the debtor to pay the tax, and this contract must be a part of the contract to pay the

interest; for it is the interest *specified therein, i. e.,* in the contract to pay the tax, which is alone invalidated. Upon these conditions it is legally impossible that a parol promise to pay taxes should invalidate a written promise to pay interest; for such parol promise could never *obligate* the debtor (Code Civ. Proc., sec. 1639). It could never be proved against him under the rule of evidence above quoted (Code Civ. Proc. sec. 1856), for the reason therein stated, that with the exceptions enumerated there is a conclusive presumption that the writing contains all the terms of the contract.

But we would not be willing to rest our decision on this technical and literal construction of the clause in question, or upon its evident conformity to the whole tenor and natural import of the language used. We concede that if, upon a comprehensive view of the several provisions of the constitution relating to this subject, there is disclosed a well-defined policy and intention on the part of the framers of the constitution which is capable of enforcement, we should give to this particular clause a construction in harmony with such policy, and an effect which will not only prevent any direct infringement of its terms, but every indirect attempt to evade them.

The appellants contend that the policy of the constitution, in this particular, is to protect improvident and necessitous borrowers from the exactions of greedy money lenders, that its inhibition of contracts by which the debtor is obligated to pay the mortgage tax is in perfect analogy with the usury laws, and that on the same grounds and to the same extent that parol evidence was admissible to prove that a contract was usurious, it must be admissible to prove a contract by the debtor to pay the mortgage tax.

Conceding, for the present, the correctness of these propositions, let us see how far the authorities bear out the claim of counsel as to the admissibility of parol evidence to sustain a plea of usury.

At the outset of their argument they quote the lan-

guage used by Lord Mansfield in delivering the opinion of the court in *Floyer* v. *Edwards*, Cowp. 114: "And where the real truth is a loan of money the wit of man cannot find a shift to take it out of the statute," and also a saying attributed to Lord Coke: "To them that lend money my caveat is that neither directly nor indirectly, by art or cunning invention, they take above six in the hundred; for they that seek by slight to creepe out of these statutes will deceive themselves and repent in the end." Although unable to verify the quotation, we have no doubt that this language is correctly attributed to Lord Coke, for the first clause of the sentence contains almost a literal statement of the terms of the usury statutes, and the last is simply a variation of the statement subsequently made by Lord Mansfield of a perfectly familiar doctrine especially applicable to the laws against usury. But neither Lord Coke nor Lord Mansfield nor any other English court or judge—so far as we are advised—ever held a case like this to be within the doctrine so stated. We have not, of course, been able to run through the almost countless cases in which the plea of usury has been interposed, but so far as our research has extended we have found no English case which sustains the contention of appellants on this precise point, and the industry of counsel seems to have been equally fruitless. What they have found, and all that they have found, are cases like that above cited from Cowper's report, of which there are a great number, all illustrating the precise meaning and limiting the application of the general statements of Coke and Mansfield above quoted.

When a money lender took a written obligation by which his debtor expressly promised to pay the principal of the loan with more than legal interest, the case was one to which the maxim *res ipsa loquitur* applied, and of course the doctrine in question had no application; but there were a large number of cases in which a plea of usury was interposed to an action on a contract by which the debtor ostensibly agreed to pay

money upon some other consideration than a loan, or by which he agreed to pay more than he had received, and these were the shifts and devices to which the sayings above quoted referred.

The case of *Floyer* v. *Edwards*, Cowp. 114, is a good illustration. The plaintiff was a refiner, and sold the defendant gold and silver wire upon an agreement made at the time of the sale that, in case the price was not paid in three months, the defendant should pay to the plaintiff a half-penny an ounce per month for so long a time as the money should remain unpaid. If this was a *bona fide* sale the agreement was lawful, and in strict accordance of the custom with the Goldsmiths' company, although a half-penny per ounce was far above the lawful rate of interest, while, if it was not a sale, but in fact a loan disguised as a sale for the purpose of evading the statute, the form in which it had been put would not protect it. The case was tried before Lord Mansfield at *nisi prius*, and parol evidence as to the negotiations preceding the transaction admitted for the purpose of determining whether it was in fact a loan or sale. Under his lordship's instructions the jury found for the plaintiff, and the rule for a new trial was discharged by the court in banc. In the course of his opinion Lord Mansfield used the language above quoted, which, in that connection, meant only this: that where the real consideration of a promise to pay money is a loan, that consideration may be proved notwithstanding the written contract has recited a sale of goods as the consideration of the promise. But of course it was a matter of familiar knowledge to Lord Mansfield that not only this particular device, but a great number of others, had been practiced by money lenders from the very beginning of the legislation against usury for the purpose of evading the statutory penalties, and no doubt he had those practices in mind.

Among the earliest and most common of these contrivances was the grant of annuities or rent charges,

CIV. CAL.—8

redeemable and otherwise. A large number of the decisions upon such cases are reviewed by Chief Justice Marshall in his opinion in *Scott* v. *Lloyd,* 9 Pet. 418, where such a grant was held to have been a mere cover for a loan at usurious rates.

Another device was to compel the borrower to buy from the lender a half interest in a clock, to be kept by the lender, or an impossible wardrobe, or other article of furniture, or a horse or a slave, or goods of any kind, at an extravagant price, and including this price in the note or bond for the money actually loaned. Another was to exact a premium for the loan at the time of making the advance, or, in other words, to take a note for a larger sum than was actually loaned. Another was to exact a bill of exchange for the amount of the debt or loan with a premium added largely in excess of the rate of discount on such bills. There were many others, as the decided cases show, but they all possessed one feature in common, and it was that particular trait which gave point and force to the observation of Lord Coke and Lord Mansfield, and which clearly indicates the extent of its just application. In every one of the cases to which we have referred it will be seen that the action was upon a contract—generally in writing— which was by its terms lawful and legitimate, and not only capable of proof against the debtor, but legally enforceable according to its terms, if valid in fact as well as in appearance. In other words, the lender had so "*contrived*" that he could actually *enforce* the payment of unlawful interest against an unwilling debtor, and thus defeat the purpose of the statute unless the debtor was allowed to prove, not a collateral verbal promise of his own having no validity or force whatever, but a concrete fact outside of the agreement and tending to show that the ostensible agreement upon which the action was founded was a sham, or that the consideration or declared object of the contract was not its real consideration or object. In such cases the courts were confronted with a dilemma in which a choice of

evils was necessary. They had either to make an inroad upon, or an exception to, a most salutary rule of evidence, or they must lend themselves to the enforcement of contracts the purpose and effect of which was to frustrate the statute. In this situation there was, of course, but one thing to do, or rather there was but one precedent to follow, for the difficulty was one that had been encountered by the courts long before the usury statutes, and had been solved by making the necessary exception to the rule of evidence. But this exception was made no broader than was necessary in order to avoid the greater evil of enforcing a contract founded upon an illegal or insufficient consideration, or entered into for the accomplishment of an unlawful object. There was no occasion to extend the exception to a case like this in which the verbal promise sought to be proved could never have had the slightest force or validity, and which, if made, gave the lender no advantage and subjected the debtor to no liability.

The distinction is clearly and forcibly stated by Chief Justice Parker in delivering the opinion of the supreme court of Massachusetts in the case of *Butterfield* v. *Kidder*, 8 Pick. 512, a case which involved the precise point under consideration here. His opinion is short, and we cannot do better than quote it in full. He says: "The verbal promise to pay eight per cent when the note was made, by which there was a promise to pay the money lent and lawful interest only, ought not to vitiate the note, for it was wholly without consideration, and cannot be taken as part of the contract, which was in writing, and must be considered as evidence of the intention of the parties. Supposing the agreement to pay and receive more than six per cent, the plaintiff could recover nothing but what is promised by the note; the additional promise was therefore wholly nugatory and cannot affect the note. If it be said that by this contrivance the statute may be avoided, the answer is that if that verbal promise should be carried into effect by paying unlawful interest the taking would be

an offense, and the party would become liable for the penalty. But by this contract now in suit there is not reserved or secured more than six per cent, and therefore the contract is not void."

It cannot be denied, however, that in some cases this distinction and the principle upon which it is founded have been overlooked. An instance of this is presented by the South Carolina case of *Willard* v. *Reeder*, 2 McCord, 369, which, like the Massachusetts case last cited, involved the precise point under discussion. Another case involving the same point and decided the same way is *Lear* v. *Yarnel*, 3 A. K. Marsh. 419, decided by the Kentucky court of appeals. *Denyse* v. *Crawford*, 18 N. J. L. 325, a case decided by the supreme court of New Jersey, is to the same effect, and so is the case of *Gilmore* v. *Woolcock*, 13 Wis. 589, decided by the supreme court of Wisconsin. With these exceptions none of the cases cited by counsel sustain them upon the point under discussion, and as to these cases we can only say that the views upon which they were decided do not command our assent. In the South Carolina case no authority is cited and no reason given to sustain the conclusion of the court, except one that begs the whole question. The court assumes that an infraction of the statute is *consummated* by the mere giving of an oral promise of no force or efficiency whatever, while, if our view and that of the supreme court of Massachusetts is correct, there results from such a promise no infraction of the law. In the Kentucky case, also, no authority is cited, and the court reasons in a circle to the same conclusion reached by the South Carolina court.

In the New Jersey and Wisconsin cases the decision is rested upon the supposed authority of a number of decisions cited in the respective opinions, but a reference to those decisions will show that they lend a very slight support to the proposition under discussion. The first case cited by the New Jersey court is *Fussil* v. *Brookes*, 2 Car. & P. 318. The report is of the proceedings on the trial at *nisi prius* before Abbett, C. J. The

defendant proved the actual payment of interest in excess of the lawful rate, but the court held that this did not avoid the bond without proof that the payment was in pursuance of a agreement made at or before the execution of the bond, but if the jury believed that it was made at or before the execution of the bond, then the bond was void. The verdict was for the plaintiff. This case, it will be observed, is in precise accord with the decision of the Massachusetts court, and establishes the proposition that where a parol promise to pay more than legal interest is relied upon to sustain a plea of usury two things must occur. There must be the fact of actual payment of usurious interest, and there must have been a promise, in pursuance of which the interest has been paid.

Clearly this case does not support the proposition to which it is cited, and the same may be said of six out of the seven other cases cited in the same connection. In one only (*Merrills* v. *Law*, 9 Cow. 65) was the question involved, and the decision of the supreme court, which was afterwards reversed by the court of errors (*Law* v. *Merrills*, 6 Wend. 268), was mainly upon a question of practice. Each of the other cases involved one of the *devices* above referred to. In the case of *Clark* v. *Badgley*, 8 N. J. L. 233, for instance, the lender sold the borrower a half interest in a clock as a part of the same transaction, and was to keep and repurchase the clock at about half the selling price.

In the Wisconsin case, also, there is the same indiscriminate citation of cases which do not support the decision, along with two or three which do support it— a sure indication that the court had entirely missed the distinction so clearly made in *Butterfield* v. *Kidder*, 8 Pick. 512.

We have carefully examined all the other cases cited by the appellants, and find that, so far as they involve the plea of usury, they were, without exception, devices by which the borrower had been compelled to enter into an apparently valid contract in writing to pay usurious

interest under the guise of an annuity, rent charge, purchase price of land or something of the kind, or to sign a note or bill for more than the amount of the loan or debt. They are all, in other words, easily distinguishable from this case. In the case of *Stein* v. *Swensen*, 46 Minn. 360, 24 Am. St. Rep. 234, for instance— and we refer to this case because it comes nearer the point than any of the others—the borrower clearly proved the *fact* that at the time of the loans and renewals he had been compelled to pay various sums in excess of legal interest, and in that connection was allowed to offer parol evidence of the understanding upon which such payments had been made. The case was in principle like *Fussil* v. *Brookes*, 2 Car. & P. 318.

In the cases of *Buffendeau* v. *Brooks*, 28 Cal. 642, and *Benicia Agricultural Works* v. *Estes* (Cal., April 17, 1893), 32 Pac. Rep. 940, parol evidence was admitted for the purpose of showing that written contracts, apparently valid, had been entered into for unlawful purposes.

From this review of the authorities it very clearly appears that the exception to the general rule of the statute (Code Civ. Proc., sec. 1856) does include evidence of a parol agreement which is part of a written agreement *when the effect of the parol agreement is to invalidate the written agreement.* But the proposition that a parol promise to do an unlawful thing will invalidate the written promise of the *same party* to do what is entirely lawful has little authority and less reason to support it. It is, of course, very different when the written promise of one party is made in consideration of an oral agreement of the other party to do an unlawful act, as in *Buffendeau* v. *Brooks, supra.* In such case the illegality of the consideration may undoubtedly be proved as a defense to an action on the written contract, because it necessarily invalidates it. This is the case to which the second exception to the rule applies.

But even if we were satisfied with the doctrine contended for by appellants as applied to the usury laws, there would still be a difficulty in applying it to the

provisions of our constitution relating to the mortgage tax. We should be compelled to disregard their strict terms in favor of a large and liberal construction in furtherance of the policy of protecting borrowers against the greedy exactions of lenders.

Before discarding a salutary rule of evidence designed to prevent frauds and perjuries, in pursuit of any object, however laudable, it is worth while to consider whether such object is possible of attainment.

If we should hold as appellants ask us to hold, there is no doubt that we should open to dispute and litigation an immense number of transactions which are otherwise secure against attack. There is as little doubt that such litigation would invite more or less falsehood and perjury, and result in some instances in the grossest injustice. All these things would come inevitably, but no single borrower would be protected or aided in the slightest degree against the exactions of lenders.

As to existing parol contracts to pay the mortgage tax, if any such there be, they are simply void, and the borrower needs no protection from the courts. As to future transactions, no grasping money lender, accustomed to the business and aware of the constitutional provisions in question, will ever take a contract, written or verbal, for the payment of the mortgage tax, not only because such a contract is void, but for the all-sufficient reason that he has no need to do so in order to exact all that the borrower can be induced to submit to. He can take all that the traffic will bear in the shape of interest, the rate of which is unlimited either by the law or the constitution. By its own inherent defect in failing to limit the rate of interest the supposed policy of the constitution is rendered incapable of enforcement by any action of the courts. All that they could accomplish by upholding the doctrine for which appellants contend would be to subject unwary lenders in isolated cases to a heavy penalty for accepting a promise of no obligation upon the borrower, and worse than

useless to the lender—an arrangement much more likely to originate in the craft of the borrower than in the greed of the lender. It is scarcely worth while to stretch the terms of the constitution or broaden the exceptions to a salutary rule of evidence in order to attain an object so inadequate.

We think the superior court did not err in the ruling complained of, or in overruling the demurrer to the complaint.

Judgment affirmed.

DE HAVEN, J., McFARLAND, J., and FITZGERALD, J., concurred.

GAROUTTE, J., dissenting.—I am compelled to dissent from the views and conclusion of the court declared in this case. If I clearly grasp the grounds upon which the court has based its conclusion, they are in the main that this oral agreement offered to be proven was collateral to the principal contract, and also made without consideration. To my mind neither of these positions has any support whatever. The oral agreement was neither collateral, nor was it without consideration. The consideration for it was the loan of the money, and this agreement to pay the taxes was based upon that consideration as fully and completely as the agreement to pay the interest on the loan, or to repay the loan itself. The agreement was not collateral. It was as much a part of the original contract entered into between these parties as any other covenant contained therein. It was so alleged to be in the answer, and so offered to be proven at the trial. Again, this case in all essentials is an exact photograph of the case of *Burbridge* v. *Lemmert*, 99 Cal. 493, except that the agreement to pay the taxes was there made in writing—a writing distinct from the mortgage. That writing was collateral to the contract and without consideration, if this oral agreement is collateral and without consideration; yet this court declared that such writing rendered the agreement in the mortgage to pay

interest void. To me, the error of the court seems to lie in assuming that the writing is conclusive evidence of the terms of the contract; and such appears to be the views of Chief Justice Parker in *Butterfield* v. *Kidder*, 8 Pick. 512, as well as we are able to ascertain those views from the very meager opinion of the court in that case; and that case is relied upon as the sole authority to support the judgment here declared. It was so decided under the peculiar and special provisions of the revised statutes of Massachusetts, and the decision without doubt must be read in the light of such statutes; for the principle there declared stands alone as an adjudication. In *Dunscomb* v. *Bunker*, 2 Met. 8, reference is made to *Butterfield* v. *Kidder*, and it is there stated that the rule is different in New York, citing *Merrills* v. *Law*, 9 Cow. 65, a case which is squarely opposed to the principal opinion of this court.

The elementary doctrine that parol testimony is not admissible, either to add to or subtract from, or in any way contradict or vary the terms of a written instrument, is conceded and recognized by all courts; and, in conjunction with certain exceptions to the rule, is substantially stated in section 1856 of the Code of Civil Procedure, to wit: "When the terms of an agreement have been reduced to writing by the parties it is to be considered as containing all those terms, and therefore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases:

"Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, . . . . to explain an extrinsic ambiguity, or to establish illegality or fraud." It is here proposed to show that a certain agreement of mortgage is void as to the interest specified therein, by showing by parol that one term of the agreement, which in itself was unlawful, was intentionally omitted therefrom. This

provision of the statute, in effect, says, that the terms of the agreement, as evidenced by the writing, are not conclusive as showing all its terms, and that other and additional terms may be shown by parol when the validity of the agreement is attacked. The validity of the agreement is here attacked, and the exception to the general principle forms the true rule. It appears to be the very case where the statute authorizes us to look beyond the contents of the writing for the purpose of ascertaining the actual terms of the agreement.

The intent and purpose of the provision of the constitution was to protect borrowers in their necessities from the exactions of money loaners, and the provision is based upon the same lines, and owes its enactment to the same reasons, that caused the passage of the usury statutes found in nearly every state of the union. It is charged that this agreement was entered into in this manner for the purpose of evading a provision of the constitution, and it would be anomalous if the offending party could so hedge himself about by writings as to prevent a court from reaching such iniquity. Lord Coke said: "To them that lend money my caveat is, that neither directly nor indirectly, by art or cunning invention, they take above six in the hundred, for they that seeke by sleight to creepe out of these statutes will deceive themselves, and repent in the end." We are unable to discern any difference in principle between the present case and those cases arising under usurious contracts. In that class of cases the doctrine is settled beyond all question that contemporaneous oral agreements are admissible for the purpose of showing the usurious character of the contract, and thereby destroying its validity.

In *Willard* v. *Reeder*, 2 McCord, 369, the *syllabus* states the point in the decision as follows: "Where a person borrowed money and gave his note for the amount, with lawful interest, and at the same time made a verbal promise to pay five per cent more interest, making twelve per cent, the court held, upon an action being

brought on the note, that it was usurious and void, although it was left to the borrower's honor only whether he would pay more than legal interest." In the opinion of the court the following language is found: " But it is said this promise did not constitute an agreement because it was merely honorary, and imposed no obligation on the defendant. This course of reasoning would lead to the ridiculous result that a party could not incur the forfeitures and penalty attached to the usury, because the act by which it was consummated imposed no obligation. Agreements against law have the form but not the binding efficacy of contracts, and, consequently, all the obligation they impose must of necessity be only honorary." In *Stein* v. *Swensen*, 46 Minn. 360, 24 Am. St. Rep. 234, the same principle is again declared, and Gilfillan, C. J., said: "As there is no device or shift on the part of the lender to evade the statute, in or behind which the law will not look in order to ascertain the real nature of the transaction, as no act, however formal, no instrument, however solemnly executed, will stand in the way of the court getting at the truth, in order to determine whether there has been an attempt to evade the law, it was competent to prove the oral agreement indicated by the question." In 7 American and English Encyclopedia of Law, page 91, the exception to the general rule as to the admission of oral testimony bearing on written instruments is stated as follows: " Provided that any of the following matters may be proved: fraud, intimidation, illegality, want of due execution, . . . . or any *other matter which, if proved, would produce any effect upon the validity of any document, or any part of it,* or which would entitle any person to any judgment, decree, or order relating thereto." Wharton, in his work on Evidence, in volume 2, section 935, says: " On the same reasoning it may be true that the contract embodied by the writing is illegal; and therefore void. If void, it is not a contract. To exclude evidence because it is a contract is to assume the very point in litigation; nor can any form

of instrument of indebtedness preclude a debtor from setting up usury."

There is no sound reason to be urged why the present case does not come squarely within the principle declared by these authorities. If the oral evidence offered in this case was properly rejected, it was wrong to admit it against the practicers of usury, and thus the practical application of those statutes would be defeated by the simplest of devices. The penalties attached to a violation of this provision of our constitution are severe, and it is not likely that parties seeking to violate it would publish their wrong to the world by inserting this void stipulation in the original instrument designed for record. Neither is it probable that they would commit their purpose to writing at all. It would most naturally be done in secret and in parol; for the borrower's parol agreement to pay the taxes upon the mortgage would be just as valuable to the money lender, and probably more valuable, than if the stipulation were incorporated in the mortgage itself. The agreement, however made, would be void in law, and its value would depend solely upon the honor of the borrower. Again, the provision of the constitution is very broad. It uses the words "every contract." It therefore clearly includes oral contracts for the loan of money not evidenced by writing of any character. Such loans would constitute solvent credits, and it cannot for a moment be contended that while the contracts of loan may be oral, yet an agreement to pay taxes by the borrower upon such loan could not also be oral. It is thus apparent that, under certain contracts coming within the purview of the provision of the constitution, the idea of oral agreements to pay the taxes was naturally and necessarily present in the minds of the framers of the instrument.

Counsel in his argument, and the opinion of the court to some extent, has strongly animadverted upon the depressing results to the general prosperity of the state, and to the special hardships which fall upon the

borrowers of money, if the construction which we have given this provision of the constitution shall be declared the law. In answer to such an argument we can only say that, by reason of counsel's warmth and earnestness in the advocacy of his client's cause, we hope and believe his fears in this regard are highly exaggerated; but, whatever may be the result, we have no power to add to or subtract from the language of this section of the constitution. We must construe it as it stands enacted, and the question as to the wisdom and policy of this provision is not a matter for our consideration. This court is not the forum to administer relief for evil in the law, if evil there be. For all the purposes of this court it is sufficient that it is a provision of the organic law of the land, and as such it is our duty to uphold and sustain it whenever assailed. As was said by Beatty, C. J., in discussing another provision of the constitution in *Sheehy* v. *Shinn*, 103 Cal. 325: "The provision of the constitution was aimed at the substance of these abuses and not at the form. . . . To give effect to the constitution it is as much the duty of the court to see that it is not evaded as that it is not directly violated." If we hold that this provision may be so easily evaded as is here contemplated, its repeal for all practical purposes will take effect from the date of such holding. Lord Mansfield said: "Where the real truth is the loan of money, the wit of man cannot find a shift to take it out of the statute." By this decision it requires but little wit to find a shift to avoid this provision of the constitution.

It is proposed to show in this case that this oral agreement to pay the tax upon the mortgage was a part and parcel of the principal contract, and that it was omitted from the contract evidenced by the writing for the very purpose of evading the provision of the constitution. We think the evidence admissible. To countenance any other practice would render the object of the provision entirely abortive. A provision of the constitution cannot be trifled with in that way, and the result of every such

attempt, when the matter is brought to the attention of the court, must be that the money lender will be overwhelmed in his own folly.

HARRISON, J., concurred in the foregoing opinion of Mr. Justice Garoutte.

Rehearing denied.