THEOPHILUS LUKENS vs. ISAAC HAZLETT.

November 22, 1887.

Usury—Rule as to Sufficiency of Evidence—Device to Evade Usury Law.—The rule of evidence in "usury cases" is the same as in any other civil action. All that is required is a fair preponderance of evidence.

Same—New Contract or Security.—Where a new contract is substituted for a usurious one, the taint of usury will affect the new security.

Same—Device of Lender to Evade Usury Law—Borrower's Intent Immaterial.—H., the payee of an overdue usurious note, pretending to L., the maker, to refuse to renew it, referred him to K., from whom he said he could borrow the money to pay it. L. thereupon applied to K. for the loan, which K. pretended to make to him, taking from him a note running to himself and giving him a check on H.'s bank, which L. indorsed over to H., receiving in exchange therefor merely his old note. In fact the pretended loan by K. was merely colorable, the transaction being a mere device by H. to evade the usury law, K. being his agent, and the new note in fact belonging to H. and being taken in substitution for the first one. *Held*, that L. could recover the value of property taken on a chattel mortgage executed to secure the new note, on the ground that it was usurious, although at the time of its execution he was ignorant of that fact, and supposed that it was made to secure an actual loan made to him by K. It is immaterial that there was no intent on the part of L. to pay usury, and no knowledge that the new note was usurious.

Trial—Cross-Examination—Discretion of Trial Court.—The latitude to be allowed in cross-examination is largely within the discretion of the trial court, and this court will not reverse unless there has been a gross and oppressive abuse of such discretion.

Appeal by defendant from an order of the district court for Wadena county, *Stearns*, J., presiding, refusing a new trial, after a verdict for plaintiff. Upon the trial the note for $637, referred to in the opinion, was offered in evidence, and on the lower left-hand corner thereof was the number "1740." Evidence was introduced showing that the defendant, who was proprietor of a bank, kept a list of bills receivable, in which the notes belonging to the defendant were regularly numbered, and in which list was given, for each note, the name of the maker, payee, amount, date, etc.; that the numbers preceding

and following 1740 were for notes bearing dates about the date of the $637 note, and that opposite the number 1740, in this list, the names of the maker of the note and the amount and date had been erased, and other names and another date and amount inserted. It appeared that, before this action was brought, Kelly, the payee of the $637 note, became insolvent, and turned over his assets, among which was found this note, to one Law, the receiver appointed by the court. Kelly, having been called as a witness by the defendant, testified that at the time he received the $637 note there was no number upon it, and that he never numbered it, and that there was no number upon it when he surrendered it to the receiver. Law, the receiver, having been called as a witness by the defendant, testified on direct examination solely to the fact that he was the receiver of Kelly and had the note in his possession, and that it was turned over to him as part of the assets of Kelly; thereupon, upon cross-examination, the plaintiff asked this question: "Mr. Law, at the time that you received that note, was that number on the lower left-hand corner?" This question the witness was allowed to answer, against the objection of the defendant as not being proper cross-examination.

*Hartshorn & Coppernoll*, for appellant, cited Tyler on Usury, 110, 231, 232, 234, 238; 5 Field's Lawyer's Briefs, §§ 709, 711; *Leonard* v. *Cox*, 10 Neb. 541, (7 N. W. Rep. 289;) *New England Co.* v. *Sandford*, 16 Neb. 689, (21 N. W. Rep. 394;) *Condit* v. *Baldwin*, 21 N. Y. 219, (78 Am. Dec. 137;) *Guggenheimer* v. *Geizler*, 81 N. Y. 293; *Morton* v. *Thurber*, 85 N. Y. 550, 555.

*A. G. Broker* and *Law & Bullard*, for respondent.

MITCHELL, J. This was an action to recover the value of personal property, taken under a chattel mortgage executed to secure an alleged usurious note.

The note for $585, executed by plaintiff to defendant, was confessedly usurious. If the $637 note secured by this mortgage had been given directly to defendant in substitution for the first one, it would have been also usurious; for where a new contract is substituted for a usurious one the taint of usury will affect the new security. *Jordan* v. *Humphrey*, 31 Minn. 495, (18 N. W. Rep. 450;) Tyler on Usury, 295.

The evidence tended to show that when the first note fell due the defendant told plaintiff that he could not renew it, but must have the money, and referred him to one Kelly, from whom he said he thought plaintiff could borrow it; that plaintiff thereupon applied to Kelly for a loan, and that Kelly assumed or pretended to loan him $637, taking as security the note and mortgage referred to, and leaving at defendant's bank a check for that amount payable to plaintiff, which plaintiff indorsed to defendant, receiving in exchange merely the $585 note. In finding a verdict for the plaintiff the jury must, under the instructions of the court, have found that in this matter Kelly was the agent or mere "cat's paw" of defendant; that the whole transaction was a mere device to evade the usury law; that the new note, although in form running to Kelly, in fact belonged to defendant, being a mere renewal of the old one. Without attempting either to state or discuss the evidence, it is enough to say that we think it was amply sufficient to justify such a conclusion. The rule of evidence in these usury cases is the same as in any other civil action. All that is required is a fair preponderance of evidence. And there is no device or shift on the part of the lender to evade the statute under or behind which the law will not look in order to ascertain the real nature of the transaction.

Defendant, however, contends that in order to constitute usury there must be a concurrence of intent of both parties,—on the part of the borrower to pay, as well as on part of the lender to take, usury; that in this case, inasmuch as plaintiff supposed he was borrowing the money from Kelly, and that he was giving the note to him to secure the loan, and did not know that defendant had any connection with the matter, therefore the new note is not infected with usury, because there was, in fact, no intention on part of plaintiff to give it in substitution for or in renewal of the old one. There are some loose statements in the text-books, and perhaps some judicial authority, to the effect that to render a contract usurious both parties must be cognizant of the fact constituting usury, and must have a common purpose to evade the law. But it seems to us that it would be contrary both to the language and policy of the usury law to hold any such doctrine, as thus broadly stated. These laws are enacted to

protect the weak and necessitous from oppression. The borrower is not *particeps criminis* with the lender, whatever his knowledge or intention may be. The lender alone is the violator of the law, and against him alone are its penalties enacted. It would be indeed strange if the only party who could violate the law had intentionally done so, and could escape its penalty because by some device or deception he had so deceived the borrower as to conceal from him the fact that he was taking usury.

If this note was in fact obtained by defendant in renewal of the usurious one, and the pretended loan by Kelly was a mere device to evade the law and conceal the fact from plaintiff, we have no doubt he could have defended an action on the note or maintain this action to recover the value of the property taken on the mortgage given to secure it, although at the time he executed it he was ignorant of the facts, and really supposed that he was borrowing the money of Kelly. *First Nat. Bank* v. *Plankinton,* 27 Wis. 177.

2. We think the question put to defendant's witness Law was legitimate cross-examination. The latitude allowable in cross-examination is very largely a matter within the discretion of the trial court, and this court will not interfere unless this discretion is grossly and oppressively abused. And even if the question was not proper cross-examination, yet, the evidence being material to the issues in the case, its admission would be no ground for reversal, unless it affirmatively appeared that the defendant was unfairly prejudiced. Nothing of this kind appears. If the plaintiff made the witness his own, defendant would have the right to cross-examine him and to introduce evidence in rebuttal.

Judgment affirmed.