LEWIS STEIN *vs.* PETER P. SWENSEN, Sheriff, and another.

June 20, 1891.

**Usury—Agreement for Extension—Principal and Agent—Evidence.—** The question is of usury in a loan and extension thereof, by plaintiff acting through his general agent to loan money to V. & Co. A writing signed by the borrower, authorizing him to negotiate the loan and referring to extensions, was proved. *Held* competent to prove an oral contemporaneous agreement in respect to extensions and commissions.

**Same—Loans by Agent—Proof of General Way of Doing Business.** *Also, held* proper to prove the general manner in which the agent transacted the business of his principal in loaning money, as that he ordinarily used a certain kind of blanks, made loans for only one month at a time, and extensions for only one month at a time, and charged commissions of a percentage on the amount upon each loan and extension.

**Same—Knowledge Imputable to Principal.—** The principal is presumed to know the general manner in which his general agent transacts his business.

**Same—Principal, when Chargeable with Usury.—** If the principal either authorizes or sanctions the taking for the use of money loaned by his agent of a sum in excess of the lawful rate of interest, even for the agent's own benefit, the principal is chargeable with usury.

**Same—Compensation Exacted by Agent, when Usurious—Evidence.** The taking by the agent of a sum, in addition to the lawful rate, if exacted by and paid to him *bona fide* as compensation for his services, and not for the use of the money, will not make the loan usurious, even though the sum be unreasonable as compensation. But its unreasonableness is evidence, of greater or less weight as it is more or less unreasonable, that it was taken in part at least for the use of the money, and that requiring it as compensation was only a cover.

**Evidence—Testimony at Former Trial.—** Where a party has taken in the cause the deposition of a witness, he cannot claim the right, on the ground of the witness' absence from the state, to prove his testimony on a former trial of the issues.

**Same—Forgetfulness of Witness.—** Failure of a witness to recollect the particular facts, short of mental imbecility, will not justify proving his testimony on a former trial.

Action brought in the district court for Hennepin county against the defendant Swensen, sheriff of the county, and David W. Knowlton, to recover for the conversion of three carriages, claimed by plaintiff under two chattel mortgages from H. C. Vaughn' & Co. Defence, that the property was taken by the defendant Swensen, as sheriff of the county, by virtue of a writ of attachment in an action brought against H. C. Vaughn & Co. by the National Bank of Commerce; that on September 15, 1888, (three days after the levy,) the debtors made an assignment in insolvency to defendant David W. Knowlton, who duly elected to retain the attachment and levy for the benefit of all the creditors, and filed notice of such intention, and on November 7, 1888, was substituted as plaintiff in the attachment suit for the purpose of enforcing the attachment, and on October 15, 1888, as assignee, received the property from the sheriff. The answer further alleges that the mortgages were void for usury. After the decision of a former appeal, (44 Minn. 218,) granting a new trial after verdict for defendants, the action was again tried, before *Smith*, J., and plaintiff had a'verdict of $986.90. The defendants appeal from an order refusing a new trial.

*Selden Bacon*, for appellants.

*S. Meyers*, for respondent.

GILFILLAN, C. J. This case was here once before on an appeal from an order denying a new trial after a verdict for defendants, and is reported in 44 Minn. 218, (46 N. W. Rep. 360.) Reference is made to the opinion therein reported for a general statement of the case. After a second trial, ending in a verdict for the plaintiff, this appeal is brought from an order denying defendants' motion for a new trial. The assignments of error are very numerous, but they may be referred to comparatively few propositions.

The loans were made in behalf of plaintiff, a non-resident of the state, by his agent, Henry Stein, doing business in Minneapolis, to Vaughn & Co., the assignors in insolvency of one of the defendants. The authority of Henry Stein to act in behalf of the plaintiff was shown by a letter of attorney, from which it appears that the former was vested with full power, without any restriction, to loan and collect money for plaintiff; in other words, to carry on the general busi-

ness of a money-lender. Henry Stein was a general agent, in the
sense that all his acts, within the general scope of his powers in that
business, are presumed to be the acts of the plaintiff. · The two loans
in question were, respectively, for $500 and $300, each for one
month, the full interest which parties may stipulate being reserved
in each note. There is no dispute that Vaughn & Co., at the times
of making the loans, also paid the agent in the case of the first loan
$15, and of the second $9; and also paid him similar sums on subse-
quent renewals or extensions, for 30 days at a time, of the notes.
The defendants claim that the $15 and $9 so paid the agent, though
paid nominally as compensation to him for services rendered by him
for the borrower, such as he had a lawful right to charge for, were in
truth paid as part of the consideration for the use of the money, and
that the extensions were made pursuant to the original agreement for
the loans, and as a means of evading the statute. The plaintiff, on
the other hand, claims that the sums so paid to the agent were *bona
fide* paid, solely as compensation for services rendered the borrower,
and that at the times of making the loans there was no understand-
ing that there should be extensions. These opposing claims present
the main questions of fact.

On the trial the notes were introduced in evidence, and on each
was indorsed with a rubber stamp the extensions of it. It does not
appear that the agent did anything else in the matter of the extensions
than to impress these indorsements on the notes, which could hardly
be deemed a service rendered the borrower, any more than an agree-
ment for the extensions (agreement for forbearance) could be regarded
a service for which a charge could be made. The defendants intro-
duced an instrument signed by the borrower, dated the same day as
the first note, and in these terms: "Agent's authority to Henry
Stein, Money Broker, 324 Nicollet avenue. I, H. C. Vaughn, hereby
authorize and employ Henry Stein to negotiate a loan for me on chat-
tel-mortgage security for the sum of five hundred dollars, for the pe-
riod of one month from date hereof, with interest thereon at the rate
of ten per cent. per annum, and agree to pay him as compensation
therefor fifteen dollars; and also agree to pay him ——— dollars for
securing an extension for said loan for each and every month after

maturity." On the examination of Vaughn, a witness for defendants, they asked him if there was an oral agreement, in addition to said instrument, for an extension or extensions of the notes upon payment of a commission, at the time of the original loan. As there is no device or shift on the part of the lender to evade the statute under or behind which the law will not look, in order to ascertain the real nature of the transaction; as no act, however formal, no instrument, however solemnly executed, will stand in the way of the court getting at the truth, in order to determine whether there has been an attempt to evade the law, it was competent to prove the oral agreement indicated by the question. But the question was, as to its form, objectionable, as, instead of asking for the conversation, it called for the conclusion of the witness, and was also leading; and, being objected to on those grounds, it was properly excluded.

The defendants asked the witness, and also the witness Henry Stein, on cross-examination, questions, the answers to which might tend to show the manner in which Henry Stein transacted the business of his agency; that he ordinarily used blanks like the above instrument; that he ordinarily made loans for only one month, and extensions for only one month, and charged commissions of a percentage on the amount loaned upon each loan and each extension, nominally for his services rendered the borrower. This evidence was excluded. It would not have been competent to prove particular independent transactions with either Vaughn or any one else, for that might raise an indefinite number of issues, the character of each to be contested, the consequence of which would be to confuse the jury, and divert their minds from the issues before them for determination. But the general manner of doing business by the agent might be proved. The authority being general to conduct the business, without any restrictions upon the agent in the manner of conducting it, the principal would be presumed to know the agent's general mode of carrying it on. If the agent conducted it usuriously, the principal would be presumed to know it, and, if he permitted it, he would be responsible to the same extent as if he authorized it in advance. If the general manner of doing it was by the use of particular blanks, by making loans and extensions for only one

month at a time, charging upon each loan and extension, in addition to the full legal rate of interest, a percentage on the loan, he would be presumed to know it. Certainly, if the business was conducted in that manner, with his knowledge, it would have the same force as evidence upon a particular transaction in issue that his personal conduct of the business in that manner would have. In *Adamson* v. *Wiggins*, 45 Minn. 448, (48 N. W. Rep. 185,) a case where usury was charged, it was held that it was proper to show the manner in which the business was conducted by the agent under his general authority to invest and reinvest the plaintiff's money. It is true, as held in *Acheson* v. *Chase*, 28 Minn. 211, (9 N. W. Rep. 734,) where an agent to loan moneys exacts from the borrower, for his own benefit, a sum in addition to the lawful interest, and the same is not authorized, sanctioned, nor ratified by the principal, it is not usury, so far as the principal is concerned; and it is equally true that, if such exaction be authorized or sanctioned by the principal, it will be usury if it would be did he make such exaction personally. *Avery* v. *Creigh*, 35 Minn. 456, (29 N. W. Rep. 154.) In that case, by agreement between the principal and agent to make loans, the latter was to receive no compensation from his principal, but was "to make what he could out of it." Of course, upon the question of usury, the written authority to the agent does not conclude the inquiry whether the principal authorized or sanctioned unlawful exactions. Whether the letter of attorney in this case authorized it or not, if the principal knowingly permitted the business to be carried on in the manner indicated by the questions excluded, such conduct of the business was as much the act of the principal as if he had so transacted it personally. Assuming that the evidence, had it been admitted, would have shown authority in the agent to make the loans in question in the manner in which they were made, was that manner any evidence of usury? We think it was. When what is taken, nominally as compensation for the agent's services, is arrived at by a percentage upon the amount loaned, instead of by agreement or estimate as to the actual value of the services, we think that from that fact the jury may conclude that the loan is the consideration for the amount thus taken, and

that the agreement that it shall be in compensation for services is only a cover. If the loan be in fact the consideration for the amount taken; if that amount be in part the consideration for the forbearance, and it be authorized or sanctioned by the principal; if the whole amount taken and reserved exceed the lawful rate, it is usury, whether it is taken for the benefit of the principal or of the agent. If an unlawful rate is taken for forbearance, it does not matter to whom the excess goes. *Avery* v. *Creigh.* It was error to exclude the evidence thus offered.

Another matter involved in one of the points made by the appellants needs consideration. It is the proposition that where an amount agreed on as compensation for the agent's services for examining securities, drawing the papers, and the like, is unreasonable or exorbitant, that of itself will make the transaction usurious. There is language used in *Acheson* v. *Chase* and *Avery* v. *Creigh* that might lead to the conclusion that such is the view of this court. But, as usury consists in taking or contracting for a greater rate than the law permits for forbearance of money, it must be apparent that, if the taking or contracting be for something else than forbearance,—than for the use of the money,—it is not usury. To hold that, if the lender and borrower agree upon a sum for compensation to the former for services for which he may charge the latter, it will make the loan usurious, if a jury shall determine that the amount thus agreed on is unreasonable, would go far to disable the parties from making any contract on the subject. They are at as full liberty to make a contract on that subject as any other, provided they do so *bona fide*, and without intent to evade the law. But, as that sort of agreement is often resorted to to cover a usurious charge, and as the court will, in such a case, look beyond the apparent agreement of the parties, to get at the actual intention, and as in such cases the amount so taken can be referable only to the use of the money or to compensation for services, unreasonableness of the amount in respect to the services is evidence of greater or less weight, according as the amount is more or less unreasonable, that such amount was taken or stipulated for as—in part, at least—compensation for the use of the money. And, as was the case in *Avery* v. *Creigh,* the

amount taken may be so exorbitant in respect to services for which the lender may charge the borrower as to force the conclusion that it was taken for the use of the money. Unreasonableness is not of itself usury, but is only evidence of it.

There are some minor questions which we can see may arise upon another trial, and will therefore dispose of. The defendants, having taken by deposition the testimony of Henry Vaughn, and the deposition being in court, are not in position to prove what he swore to on a former trial, on the ground of his being out of the state, even though that be a ground for it in any case. We do not think his failure to recollect the particular facts justifies proving his former testimony. When failure of memory amounts to mental imbecility, the witness is as one dead or insane, and, as his testimony cannot then be taken, his testimony upon a former trial of the same issues, between the same parties, may be resorted to. To admit it in any less case would continually present the question, what degree of forgetfulness shall be required?

Where the question is what was the agreement between two parties, neither can ordinarily testify what he understood it to be, but he must testify what was said and done. Henry Stein was shown competent to testify to the value of his services.

Order reversed.