JAMES A. SAXE v. PATTIE C. WOMACK and Another.[1]

February 7, 1896.

Nos. 9661—(277).

**Usury—Sale as Part Consideration for Promise to Pay.**

The price of property sold in good faith may be included in the same
security with money loaned, and the fact that the price was large, and
more than the property could have been sold for, does not necessarily con-
demn the transaction as usurious. The inquiry in such a case is whether,
upon the evidence, there was any corrupt agreement or device, or shift,
to receive or take usury; and in this aspect of the case the quo animo as
well as the acts of the parties is most important.

**Same—Discrepancy between Value and Price.**

Such a transaction is not per se illegal, though it may be so. And, be-
cause an article is depreciated in the market, it does not follow that the
owner is not entitled to demand or receive a higher price, as a condition
for parting with it.

Appeal by defendants from an order of the district court for
Ramsey county, Otis, J., denying a motion for a new trial. Af-
firmed.

*Briggs & Countryman*, for appellants.

*Stiles W. Burr*, for respondent.

COLLINS, J. Action upon a promissory note secured by a mort-
gage. Defense, usury. The court below, trying the case without
a jury, found against defendants, and from an order denying a new
trial they appeal.

Stated as briefly as possible, the controlling facts are these:
Plaintiff, a nonresident, had made a few loans in the city of St. Paul,
taking real-estate security. One Griggs collected interest and prin-
cipal for him as it became due, remitting as collected. Through
the foreclosure of a mortgage given to secure the payment of one
of these loans, plaintiff, in 1893, became the owner of five unim-
proved and unproductive city lots, in which he had thus invested
about $1,300. It had always been represented to him by Griggs
and others that these lots were worth the amount invested. He

[1] Reported in 66 N. W. 269.

came to St. Paul in the summer of 1893, and then learned that because of the depression in values, and the stringency in money matters, the lots could not be sold for $1,300; but, from information received, he did believe that their fair market value was $1,000, and that a sale for that sum might be made. He was exceedingly anxious to dispose of them, that the proceeds might be invested so as to draw interest, and authorized Griggs to make a loan of money in connection with the sale at $1,300, if such a loan would induce and secure a purchaser. The court found that, because of the depression and stringency before mentioned, these lots could not have then been sold, nor could they have since been sold, for a sum exceeding $500, and that this was their fair market value, and that Griggs knew this, but concealed it from plaintiff. The court also found that at all times plaintiff believed that, by waiting for a revival in business, the lots could be disposed of so that his investment would be made good. Thereafter defendants applied to Griggs to procure a loan for them of $5,000, to be secured by a mortgage upon certain real property; proposing to pay him what his services were reasonably worth, if he should succeed. Griggs submitted the application to plaintiff, and it was finally agreed that, although defendants did not want to buy the lots, and, upon personal inspection, thought the price too high, plaintiff should loan the $5,000, and defendants should purchase the lots at $1,300, and that for the total sum, $6,300, defendants should give their note bearing 7 per cent. interest, secured by the mortgage before mentioned. The defendants duly executed and delivered to Griggs two separate notes, each secured by a mortgage upon separate tracts of land, while plaintiff conveyed the lots by deed to defendant Pattie C. Womack. Plaintiff was then a married man, but concealed the fact from defendants, and his wife did not join in the deed. The action was upon one of these notes, and, as before stated, the trial court found that the transaction was not tainted with usury.

We are of the opinion that the order denying defendants' motion for a new trial must be affirmed, and, for the purpose of disposing of the case, shall assume that Griggs' knowledge of the market value of the lots, and that they could not be sold for more than $500, must be imputed to plaintiff. We therefore proceed upon the

assumption that because of the stringency of the money market, and the depression in real-estate values, the plaintiff had been informed that the lots could not be presently sold for a sum exceeding $500, although it was his belief that in time he could sell for enough to cover and make good all that he had invested. It is well to say here, because of the low rate of interest agreed upon, and the length of time given for payment of the $6,300, that a usurious contract could not have been founded on this feature of the transaction, if the market value of the lots had actually exceeded the sum of $865. In this case the burden rested, as it does in all cases of this character, upon the party asserting the transaction to have been usurious, to show it. It is not a necessary inference from the fact that plaintiff compelled defendants to purchase his property, or because his price was greater than the actual market value. Whether the purchase of property, in connection with a loan, as a part of the consideration and an inducement therefor, is in fact a cover for usury, must ordinarily be determined as a question of fact. Stein v. Swensen, 46 Minn. 360, 49 N. W. 55. And while it is true that proof of any great discrepancy between the actual value and the pretended purchase price of property frequently characterizes the nature of the transaction, and serves to establish it as nothing but a device to evade the usury law, the effect is not conclusive by any means. Lewis v. Willoughby, 43 Minn. 307, 45 N. W. 439.

The case of Bank of United States v. Waggener, 9 Pet. 378, is a leading case, and is specially in point here. The facts were that a loan of $5,000 was negotiated at full legal interest, on condition that the borrower should accept $1,100 of the amount in depreciated bank notes, at their par value, although their current value was only 60 or 70 per cent. of the par value. After laying down some general rules in respect to usurious contracts, the court said:[2] "The case, then, resolves itself into this inquiry: Whether, upon the evidence, there was any corrupt agreement or device, or shift, to reserve or take usury; and in this aspect of the case, the quo animo, as well as the acts of the parties, is most important. * * * Such an exchange is not per se illegal, though it may be so if it

[2] At pages 400, 401, 403.

is a mere shift or device to cover usury.  *  *·  *   Because·an arti-
cle is depreciated in the market, it does not follow that the owner
is not entitled to demand or require a higher price for it before he
consents to part with it." "In our opinion, the instruction  *  *  *
ought not to have been given.  It  *  *  *  puts the bar to the recov-
ery  *  *  *  substantially upon the ground that the bank notes
loaned were a known depreciated currency,  *  *  *  and were
passed at their nominal amounts by the plaintiffs to the defend-
ants." This last remark was in reference to an instruction to the
jury in the trial court, and a verdict for defendants was reversed
because the instruction was erroneous.  Another case in point is
that of Thurston v. Cornell, 38 N. Y. 281, where it was said that no
one questions but that the price of property sold in good faith may
be included in the same security with money loaned, and also that
the fact that the price was large, and more than it might have
been sold for, does not necessarily condemn the transaction as usu-
rious.  See, also, Chase v. New York M. L. Co., 49 Minn. 111, 51
N. W. 816.

Now, let us examine the facts in this case.  Plaintiff was not a
dealer in real estate, but had a few thousand dollars loaned out in
the city of St. Paul.  He was a young man, just about to commence
the practice of law at his place of residence in the East.  He was
in great need of the income which came from his loans as the an-
nual interest, and, from the evidence, it quite clearly appears that
his agent had not made the best of investments.  His interest was
not being paid when due, and the letters from Griggs to him show
that the former was endeavoring to smooth matters over, and was
concealing the fact that the loans made were not first-class.
Through a foreclosure the lots in question became plaintiff's prop-
erty, and he realized that they would greatly increase the un-
pleasantness of his condition.  He believed that in time the lots
would prove a remunerative investment at what they cost, $1,300,
although, attributing to him his agent's knowledge, he knew that
their present market value did not exceed $500.  Exceedingly anx-
ious to dispose of them, and thus to have the money earning some-
thing, he conceived the plan of making a loan of sufficient size to
induce a purchaser at $1,300.  Not only was he willing to make the
loan of such an amount of money as was necessary to bring a

buyer for the lots, but the record fails to disclose that he ever limited the amount to be loaned. Apparently, he was as willing to loan $20,000 as $5,000, if good security could be had. The amount to be loaned was left open, and if plaintiff did not have it of his own when the application came to hand, he was to borrow it of some moneyed friends. And when Griggs sent in the application the plaintiff raised no question as to the amount of money desired by the borrowers, all that he cared for being the adequacy of the security. Again, the rate of interest demanded was but 7 per cent. per annum, 3 per cent. less than the rate which may be lawfully charged. And the time given was such that, coupled with the low rate of interest, no claim of usury could have been successfully asserted if the lots had actually been worth $865, instead of but $500. Or, to put it in another form, if plaintiff had sold his lots for $865, instead of $1,300, no charge that the contract was usurious could be sustained.

These facts tend to demonstrate that the loaning of money at an usurious rate of interest was not in the plaintiff's mind at all, but that his anxiety was to dispose of his unproductive real estate so that he would lose nothing,—to find another willing to carry it until times should so far improve as to permit a sale without any loss to the latter. In passing upon what was intended, we are not to lose sight of the fact that plaintiff believed that ultimately there would be no loss to any one. And we must also bear in mind that we are dealing with a case in which city lots were sold, the value of which, present and prospective, is largely, almost wholly, a matter of opinion, and that a transaction of this kind cannot be treated as we would one in which some staple article, having an easily ascertained and certain value, had been the property sold to a borrower. In the one case the discrepancy between actual market value and the price is frequently very great,—largely based upon the seller's or the buyer's idea of what the future prospects may be, —while, with the staple article of commerce, the market price of to-day is almost always controlling. Real estate is frequently valued by the owner at what he thinks may be its prospective value, and is often bought because the purchaser believes its prospective value is so far above the market value as to warrant an investment. Now, in the case at bar, the defendants' contention that

the sale was a mere pretense of sale, used and intended as a disguise with which to cover the taking of usurious interest, is based on nothing but the fact that the property was sold for more than it was worth. The price paid, in comparison with what it could have been sold for, is made the sole test by which to ascertain the intent in making the sale and the loan. Nothing else indicates the corrupt and unconscionable bargain, and, as before stated, if it had happened that the market value of the lots was $865, instead of $500, no claim of usury could have been made. It was said in a recent case, "As usury works an absolute forfeiture of the entire debt, the proofs on which it rests should be scrutinized, and the rule as to the effect of a fair preponderance applied, with more strictness than in ordinary civil actions." Yellow M. C. Bank v. Cook, 61 Minn. 452, 63 N. W. 1093. We cannot hold, as against the findings made below, that the contract was tainted with usury.

The point is made that the note must be held usurious because of the amount of commissions paid by defendants to Griggs for his services. We are of the opinion that the findings of fact on this matter of commissions or compensation to the agent, paid by defendants, were supported by the evidence;[3] and hence the conclusion of law, in so far as this feature of the case is concerned, was warranted.

Finally, the appellants' counsel contend that the decision of the trial court must be reversed, and it must be held that the transaction was usurious, because plaintiff was a married man when he deeded the lots, and his wife did not join in the deed. As the wife retained her inchoate statutory interest, which, should her husband die first, would ripen into a perfect title to an undivided one-third, the lots, or such part as defendants acquired title to, were worth but two-thirds of $500. This, in effect, is a claim that the corrupt bargain is shown because plaintiff did not convey a perfect title. It is evident that, because plaintiff concealed the fact that he was a married man, defendants did not get what they bargained for, and it is also evident that they are not remediless. But the circumstance is not evidence of an intent on the part of the parties to enter into a corrupt bargain. It is really against it, for parties

[3] The court found, as a fact, that the commissions were paid "without any intention on the part of any one of evading the usury laws."

who attempt to evade the usury laws are usually very careful to have the transaction appear complete and perfect on its face. Ordinarily, too much care in this respect is manifested, instead of too little.

Order affirmed.