MARY T. CARPENTER v. SARAH C. LAMPHERE and Another.[1]

December 23, 1897.

Nos. 10,641—(42).

**Usury—Mortgage—Principal and Agent—Evidence Supports Finding.**
Evidence *held* to support the finding and decision of the trial court to the effect that the note and mortgage herein are usurious, and should be canceled.

Appeal by plaintiff from an order of the district court for Clay county, Baxter, J., denying the motion of plaintiff to set aside the findings of the court in favor of defendants and for a new trial. Affirmed.

*F. H. Peterson* and *Ira B. Mills,* for appellant.

On the question of whether Titus was Carpenter's general agent the following cases were cited: Avery v. Creigh, 35 Minn. 456; Lewis v. Willoughby, 43 Minn. 307; Kemmitt v. Adamson, 44 Minn. 121; Adamson v. Wiggins, 45 Minn. 448; Hawkins v. Sauby, 48 Minn. 69; Stephens v. Olson, 62 Minn. 295; Hall v. Maudlin, 58 Minn. 137; Horkan v. Nesbitt, 58 Minn. 487. To charge the principal with usury he must have a guilty knowledge of the agent's act and benefit by it. Jackson v. Travis, 42 Minn. 438; Stein v. Swensen, 44 Minn. 218. The facts in this case are more nearly like the cases of Thomas v. Miller, 39 Minn. 339; Strait v. Frary, 33 Minn. 194; Brainard v. Prouty, 66 Minn. 343; Acheson v. Chase, 28 Minn. 211.

*George E. Perley* and *C. A. Nye,* for respondents.

This case is squarely within the rule laid down in Avery v. Creigh, 35 Minn. 456. If the principal authorizes the taking of a sum in excess of the lawful rate of interest, even for the agent's own use, the principal is chargeable with usury. Stein v. Swensen, 46 Minn. 360. The principal, having placed the whole matter in the hands of Titus, is bound by his agent's acts. Adamson v. Wiggins, 45 Minn. 448; Hall v. Maudlin, 58 Minn. 137.

[1] Reported in 73 N. W. 514.

START, C. J.

This action was brought to foreclose a real-estate mortgage, securing a note of $1,500 executed by the defendants to Richard E. Carpenter on July 6, 1885, payable five years after date, with interest at ten per cent. per annum, which was assigned to the plaintiff, the wife of the mortgagee. The defense was a partial payment of $500, and, further, that the note and mortgage were usurious. The trial court found for the defendants upon both issues and directed judgment for the defendants, canceling the note and mortgage. The plaintiff appealed from an order denying her motion for a new trial.

The loan in question was made at Moorhead, in this state, by a loan agent, Daniel Titus, a brother of the plaintiff, who deducted from the amount thereof $75, as a bonus or commission in excess of interest at the highest rate permitted by law, as his compensation for services in making the loan. Questions of fact only are raised by this appeal, and the important and pivotal one is: Was Titus the general agent of Carpenter in making the loan? The trial court found as a fact that he was, and the question we have to answer is whether such finding is sustained by the evidence.

The evidence as to the business relations of Carpenter and Titus was largely documentary, consisting of their correspondence, some 50 letters in all. It is true that Carpenter denied such agency, but the correspondence speaks for itself. It will serve no practical purpose here to discuss or analyze this voluminous correspondence. We have attentively considered the whole of it, and content ourselves with stating the conclusion reached, which is that the finding in question is sustained by the evidence.

It is further urged on behalf of the plaintiff that, conceding that Titus was Carpenter's agent, still the transaction was not usurious. The mortgaged premises were vacant lots, and the loan was made to enable the defendants to erect a dwelling house thereon, and by agreement of the parties the money was to be paid to the defendants in instalments as the work progressed. The evidence does not justify the conclusion that any part of the $75 was paid to Carpenter. It is the claim of the plaintiff that it was paid to Titus for services rendered to the defendants for examining the title, draw-

ing the necessary papers connected with the making of the loan, and for his supervision of the work on the house, and examining and paying the bills therefor; hence no part of the $75 was retained for the use of the money loaned, and the exaction of it by Titus for his services rendered to the defendants does not render the loan usurious. If the plaintiff's premises were correct, the conclusion would be also. Stein v. Swensen, 46 Minn. 360, 49 N. W. 55.

The trial court, however, found, as a fact, against the correctness of the plaintiff's premises, and found in effect that the $75 was not withheld for the payment of legitimate services of Titus rendered to the defendants, but as a bonus to be paid in excess of the highest legal rate of interest for the use of the money loaned. The plaintiff assails this finding as unsupported by the evidence.

There is evidence in the record fairly tending to show that it was understood between Carpenter and Titus that the rate of interest named in the note should be net to the former, and that the latter was authorized and expected to collect from the borrower compensation for whatever services Titus rendered to Carpenter in making the loan; and, further, that the retention of money loaned by Titus, and its payment in instalments to the defendants, as the work on the house progressed, were done at the request and for the benefit of Carpenter; and that Titus in fact rendered no services with reference to the erection of the house, except to so retain and pay the loan in instalments.

This evidence, in connection with the admitted fact that only $1,425 was paid to the defendants on their note and mortgage for $1,500, and the evidence of the defendant George N. Lamphere that the agreement was that the mortgagors should pay interest at the rate of ten per cent. per annum and a commission of five per cent. for securing the loan, is sufficient to sustain the finding and conclusion of the trial court that the transaction was usurious. Hall v. Maudlin, 58 Minn. 137, 59 N. W. 985. The repudiation on the trial of the act of Titus in exacting the $75 by the plaintiff, and her offer to indorse the amount on the principal, did not purge the transaction of usury.

Order affirmed.

BUCK, J. (dissenting).

I dissent. In order to constitute usury, there must be paid, or an agreement be made to pay, a greater rate of interest than is allowed by law, coupled with a corrupt intent on the part of the lender to take more than the legal rate of interest for the use of the sum loaned. There must be an intention knowingly to contract for or to take usurious interest, because, if neither party intend it, the law will not infer a corrupt agreement between the parties.

That usury is placed under the ban of the law is doubtless a wise provision, in view of the rapacity of capitalists, and the temptation of the money loaner to take advantage of the necessities and improvidences of the borrower. But the temptation of the borrower frequently to evade the payment of an honest debt is growing to alarming proportions in the commercial world, and just where is the dividing line between usury and the legal obligation to pay for money borrowed and used, is sometimes difficult of solution. That the law must be observed when the corrupt intent appears to get more money than the law allows admits of no argument; but formerly, when a man borrowed hundreds or thousands of dollars, and used the same for his own benefit or pleasure, equity was the rule,— that he should at least pay back what is justly and in good faith due, viz. the principal and legal interest. While the law seems to have superseded equity, and allows the borrower to enjoy the luxury of living upon and enjoying other people's money, the facts ought to be conclusive that warrant him in so doing.

This is, in my opinion, no such case. It is conclusively one to the contrary. The money was loaned through an agent, one Titus. The lender was one Carpenter. Carpenter denied authorizing Titus to take any usury, or that he ever received any, and the defendant borrower testified as follows:

"Q. You told him [Titus] you would give him seventy-five dollars if he would get the money for you? A. He told me his charge would be seventy-five dollars. Q. And you told him you would give it to him for getting you the money? A. Yes, sir. Q. He didn't say the lender wanted seventy-five dollars additional, did he, or five per cent. in addition? A. I don't remember that he said anything of that kind. Q. It was for the purpose of paying Mr. Titus his compensation for doing the work, was it not? A. That was what he charged for getting it. Q. That was the agreement between

70 M.—35

you and him that Mr. Titus himself was to have $75 for getting the money for you? A. He charged ten per cent. per annum and five per cent. commission on the loan. Q. Did he assume to charge you any interest at all? A. I would not have paid him if I hadn't agreed to. Q. What was this $75 for? A. It was a commission or bonus, or something of that sort. Q. To pay whom? A. To pay himself. Q. To pay Mr. Titus? A. I suppose so. Q. For what purpose? A. Well, I don't know. You can't hardly prove that with me. It is customary among loaning agents to charge what they call a 'bonus' or 'commission.' Q. For procuring the money? A. Well, I don't know whether it is for procuring it or not. They make that charge for extra compensation in some way. Q. You know as a matter of fact it was for the purpose of paying Mr. Titus for doing the work? A. What I think about is this— Q. What do you know about it? A. Well, it was his compensation— Q. His principal took the ten per cent. interest? A. I think so, yes. Q. You don't claim any part of that $75 went to the principal, do you? A. I don't know as to that."

If, with such evidence as this, substantially uncontradicted, money loaners can be deprived of their money loaned, it is difficult to see where the matter will end. The temptation to perjury on the part of the borrower is equally as great as the temptation to exact usurious interest on the part of the lender, though the defendant borrower cannot be charged with false swearing in this case, for he frankly admits that the money was paid to the agent Titus for getting the money for defendant, and that he had no knowledge that it ever went to Carpenter or was for his benefit.

The order should be reversed.