## FISHER v. ADAMSON, et al.

No. 2709.   Decided August 6, 1915 (151 Pac. 351).

1.  USURY—ACTIONS—EVIDENCE—SUFFICIENCY.  In a suit on a note, where the defense was usury, evidence *held* to support a finding that the sums plaintiff received in addition to the legal rate of interest were for his services in examining the security offered for the loan.  (Page 4.)

2.  USURY—WHAT CONSTITUTES.  Where a lender refused to make a loan because the interest would not pay him for looking up the securities, and the borrower agreed to a reasonable amount for the loan and for examining the securities, the acceptance of such amount does not constitute usury.  (Page 5.)

Appeal from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by H. C. Fisher against Elizabeth M. Adamson and D. W. Adamson.

Judgment for plaintiff.   Defendants appeal.

AFFIRMED.

*H. J. Robinson,* for appellants.

*Stringfellow & Whitaker,* for respondent.

STRAUP, C. J.

Plaintiff brought this action to recover on a promissory note of $300, dated July 27, 1912, payable in sixty days by the defendants to the plaintiff, "without interest until ma-

turity, and one per cent. per month thereafter.'' The execution and nonpayment of the note are admitted. The defense is usury. The court found against the defendants. They appeal.

The only question is that of usury. By our statute (C. L. 1907, section 1241x) the maximum legal rate of interest is one per cent. per month. The statute further (section 1241x 3) provides that:

''All. * * * notes * * * whereupon or whereby there shall be reserved or taken or secured, or agreed to be reserved or taken, any greater sum or greater value for the loan or forbearance of any money, goods, or other things in action than is above prescribed, shall be void.''

The note was secured by another note of $2,000 of another party, payable to the defendant, Mrs. Adamson, which was secured by a realty mortgage.

As shown by the plaintiff's evidence the facts are: The defendants applied to the plaintiff for a loan of $300 for sixty days, and offered the other note and mortgage as security. The plaintiff declined to make the loan, stating that the trouble in looking up the securities would be worth more than the amount of legal interest, $6. The defendants thereupon agreed to pay him $10 for interest and his trouble in looking up the securities. As to that the plaintiff testified that a Mr. Parker brought the defendant Adamson to him, and—

''I told him I couldn't afford to leave my business and look into it for the small amount of money it involved. Mr. Parker and Mr. Adamson said it would certainly be an accommodation if I could make the loan, that they were in a position where they needed the money bad, and Mr. Adamson said they were excavating some ground in order to put up a permanent house—said they needed the money in doing the excavating, and tearing down the old house. He said, if I would make the loan, he would give me $10 for the loan and for my trouble in looking up the security.''

The plaintiff thereupon examined the security, and, finding it satisfactory, made the loan the next day, paying the defendant $290; they in turn giving him the note and the

security.   Another witness for the plaintiff testified substantially to the same facts.

Parker testified on behalf of the defendants that the plaintiff said that the $6 interest would not be enough, and that Mr. Adamson immediately spoke up and said, "I will give you ten dollars if you will let me have the money; I have to have it"; that he was excavating for a house and needed the money; that the plaintiff consented then to make "a date the following day; so they made a date the following day, to look into the matter; so we left at that time." The loan was made the next day, the plaintiff paying the defendants $290, they in turn giving him the note sued on, and indorsed and transferred the security. He further testified that the plaintiff said—

"he did not have time to look into it, as there wasn't enough there for him, when I told him it would amount to six dollars; but when Mr. Adamson said ten dollars he took it.   Q.   Then Mr. Adamson said he would give him ten dollars to pay him for his trouble in looking into it.   A.   Yes, sir."

Adamson testified that the plaintiff said—

"he would make the loan, but the consideration wasn't sufficient.   I asked him what he would consider sufficient, and he asked me what I would be willing to give.   I told him.   I offered him ten dollars for sixty days, and he consented to that consideration."

And the plaintiff, thereupon, the next day, paid him $290, and the defendants gave him their note for $300, payable in sixty days, without interest, and one per cent. per month after maturity.

As already observed, the court found the facts as testified to by the plaintiff.   The findings are amply supported by the evidence.   Upon those findings we think the judgment right.   The law applicable to them, and as stated in 39 Cyc. 918, is:

"In deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take, and look only to the substance of the transaction, in order to determine whether all the requisites of usury are present.   These requisites are:   (1) An unlawful intent;   (2) the subject-matter must be money or money's

equivalent; (3) a loan or forbearance; (4) the sum loaned must be absolutely, not contingently, repayable; and (5) there must be an exaction for the use of the loan of something in excess of what is allowed by law."

Again on page 981:

"The circumstances attendant upon the making of a loan may require many kinds of services to be rendered to the borrower by the lender or his agent. For such services rendered in good faith the lender may properly require of the borrower a reasonable compensation in addition to the highest legal rate of interest upon the money loaned. Nor will an honest agreement for such compensation render the loan illegal, even though the service rendered may be such as the lender would ordinarily perform in his own interest. But the lender will not be permitted to cloak his usurious intent beneath pretended services, or exact commissions which are unconscionable and grossly oppressive; and it has been held that where the charge for examining the security is made by the agent of the lender, in pursuance of a contract with the lender, it is usurious for the lender to require the borrower to pay for services for which the lender was legally liable. The lender may require the borrower to pay the cost of examining the title to land offered as security, or preparing papers and doing other formal acts necessary to the security of a loan. However, a charge for pretended services of this character in addition to the legal rate of interest will render the loan usurious."

From the facts testified to upon behalf of the plaintiff, it does not appear that the services rendered by the plaintiff in looking into the security were merely "pretended" or "a cloak"; nor do they indicate an unlawful or usurious intent. Certain it is that what the defendants agreed to pay for such services was neither unconscionable nor oppressive. It is hard, even from the testimony alone of Adamson, to deduce an unlawful or usurious intent.

Let the judgment be affirmed, with costs. Such is the order.

FRICK and McCARTY, JJ., concur.