WALTER B. HOBART v. DESIRE H. MICHAUD.[1]

June 1, 1928.

No. 26,633.

**Finding sustained that mortgage loan was not usurious.**

In this action to cancel a note and mortgage for usury, it is *held*:

(1) The findings are sustained that the two persons who procured defendant to make the loan were the agents of plaintiff and not of defendant, and that $110 was paid to one of such agents for both by defendant, believing in good faith that he had a right so to do under his agreement with plaintiff.

(2) The evidence supports the findings that $100 was a reasonable charge for the appraisement of the security and a proper expense which it was agreed should be deducted from the money loaned, and was not received for the use or forbearance thereof nor taken with any corrupt intent to evade the usury law.

Usury, 39 Cyc. p. 981 n. 58.

See note in 21 R. C. L. 871; 27 R. C. L. 236; 4 R. C. L. Supp. 871.

Plaintiff appealed from a judgment of the district court for Ramsey county, Boerner, J. Affirmed.

*Norton & Norton,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for respondent.

HOLT, J.

Plaintiff appeals from an adverse judgment in this action to set aside a note and mortgage for usury.

There was a former trial with findings of no usury. A new trial was awarded in this court. Hobart v. Michaud, 167 Minn. 1, 208 N. W. 191, 209 N. W. 39. The cause was tried to another judge, and the findings were again that no usury tainted the loan. Plaintiff borrowed $5,500 for 90 days at six per cent interest. No claim is made that the amounts for recording, for revenue stamps, for

[1]Reported in 219 N. W. 878.

automobile charges in viewing the security, or for the services of the attorney in examining the title are items which should have been figured as compensation exacted for the use or forbearance of the money loaned. Plaintiff does not dispute those amounts, nor his obligation to pay them as lawful expenses of the borrower. But there were two items deducted from the loan either one of which, if found not a legitimate expense or a cover for usury, will make the transaction illegal and void. One item is $110 which defendant paid to the brokers who procured the loan, and the other item is $100 claimed by defendant for his services in viewing and appraising the worth of the security.

The findings relative to the first item are in substance: That plaintiff agreed to stand all expenses incidental to the loan; that the same should be deducted from the amount thereof; that plaintiff had engaged O. O. Mattson to procure the loan, and Mattson called to his aid Adelard Michaud, the two agreeing to share equally the commission of two per cent for obtaining a lender; that they procured the defendant to make the loan; that their services were reasonably worth $110; that defendant paid said amount to Adelard Michaud, believing in good faith that such payment constituted payment of a commission to Mattson and Adelard Michaud for the services rendered plaintiff; that said parties were the agents of plaintiff, and not of defendant; and that no part of said $110 went to defendant or for his benefit. We consider each of these several findings so well sustained that they should stand.

The record indicates that Marcus P. Hobart, the father of plaintiff, was either the real party in interest or else that plaintiff had invested him with full authority in the premises. Marcus P. Hobart requested Mattson, whom he knew to be a loan broker or intermediary, to find a lender. Mattson went to Adelard Michaud, who was in the same business, for assistance. The latter considered his cousin, the defendant, a likely lender. They went to him and later brought Marcus P. Hobart to defendant, and the loan was made. True, the record is scant as to any direct testimony that the borrower should pay the commission or that the lender should to

these agents or brokers. But Marcus P. Hobart as well as his agent and subagent were in the real estate and loan business, were perfectly familiar with the custom in respect to the payment of commission for such services, and could not suppose that the lender was to pay the broker's commission on a short time loan carrying no more than six per cent interest; hence one would not expect much to be said on the subject. The testimony that the reasonable commission was from two to three per cent of the loan is not disputed. The fact that Adelard had not turned over to Mattson his share was a matter between them. In disbursing this $110 defendant was but a conduit through which plaintiff's agents were paid. Although there is conflict to some extent as to what was said and done when the transaction was closed, the court was justified in finding that defendant was authorized by plaintiff to disburse the $110. Even if in fact Adelard had not been plaintiff's agent, but defendant in good faith believed him such and entitled to the commission, the court could eliminate the payment made in determining whether more than legal interest was exacted. Grieser v. Hall, 56 Minn. 155, 57 N. W. 462.

A closer question is found in the $100 retained by defendant for his services in viewing and appraising the sufficiency of the security. The findings in that respect are in effect: That defendant was qualified to examine and appraise the land; that it was agreed he should do so, and deduct his compensation from the loan; that he did examine and appraise the land; and that such services were of the reasonable worth and value of $100. There was also a finding that in the whole transaction there was no corrupt intent to evade the usury law. Plaintiff's expert on appraisal services estimated the same at $15 and automobile hire; defendant and his two experts placed the value at $100 and better. Upon this evidence there is no excuse for the appellate court to interfere with the finding of value. It is significant that Marcus P. Hobart, who had spent a lifetime in the real estate and loan business and was not unacquainted with usury litigation (Ormund v. Hobart, 36 Minn. 306, 31 N. W. 213), did not testify as to the value of such services.

The question comes really down to this: Whether a lender may

in any case charge for appraisal of the security offered for money loaned. We think our prior decisions have answered the question in the affirmative. Appraisal services are placed in the class with attorneys' fees for examining the title of the security. Mackey v. Winkler, 35 Minn. 513, 29 N. W. 337; Daley v. Minn. L. & Inv. Co. 43 Minn. 517, 45 N. W. 1100; Stein v. Swensen, 44 Minn. 218, 46 N. W. 360; Id. 46 Minn. 360, 49 N. W. 55, 24 A. S. R. 234; Carpenter v. Lamphere, 70 Minn. 542, 73 N. W. 514; Lassman v. Jacobson, 125 Minn. 218, 146 N. W. 350, 51 L.R.A.(N.S.) 465, Ann. Cas. 1915C, 774. The same is held in other states. Matthews v. Georgia State Sav. Assn. 132 Ark. 219, 200 S. W. 130, 21 A. L. R. 789; Iowa Sav. & Loan Assn. v. Heidt, 107 Iowa, 297, 77 N. W. 1050, 43 L. R. A. 689, 70 A. S. R. 197; Fisher v. Adamson, 47 Utah, 3, 151 P. 351; Testera v. Richardson, 77 Wash. 377, 137 P. 998; Liskey v. Snyder, 56 W. Va. 610, 49 S. E. 515. For additional authorities see annotation, First Nat. Bank v. Phares, 21 A. L. R. 793.

We apprehend that if the lender were an attorney he might charge a reasonable fee for the examination of the title and the amount so received would not be considered as compensation for the use of the money. And there would seem to be no real distinction between services of appraisement of the security and services in the examination of the title thereof. We appreciate that either charge lends itself readily as a cover for usury and therefore is to be closely scrutinized and held down to the reasonable value of the services actually rendered. The amount here charged seems to us large, but the sum loaned was large, a large amount of back taxes were due on the land, other land owned by the Hobarts was about to be lost on foreclosure and the title in so precarious condition that defendant's attorney advised against accepting that as security; hence there was need of careful appraisement of the land to be accepted. The experience and standing of the expert are also to be considered. In view of the findings of two trial courts upon the testimony as to the value, as above indicated, the established practice of this court is to accept the findings as verities.

Ordinarily findings upon evidence like that presented upon the value of the appraisal services here would not even be questioned

as unsustained in this court; but where usury is involved the consequences are so drastic that triers of fact are required to scrutinize the evidence with the utmost care. The whole amount loaned is at stake. For both lender and borrower the inducement to falsify is equally great. The devices for evading the usury statute are many and varied, and such are the defenses so often interposed when the time arrives for repayment of money borrowed. While the rule above stated, to be applied by the jury or the trial court, has been voiced in many decisions of this court, still it remains true that where a cause of action or a defense is based on usury a fair preponderance is sufficient to establish the same. Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265; Hass v. Camp, 40 Minn. 329, 42 N. W. 20; Phelps v. Montgomery, 60 Minn. 303, 62 N. W. 260; Yellow Medicine Co. Bank v. Cook, 61 Minn. 452, 63 N. W. 1093; Saxe v. Womack, 64 Minn. 162, 66 N. W. 269; Temple v. Davis, 115 Minn. 328, 132 N. W. 257.

Plaintiff correctly claims that the retention of $100 by defendant raises a presumption of usury from the fact that this sum with the interest reserved in the note exceeds the highest legal rate. Holmen v. Rugland, 46 Minn. 400, 49 N. W. 189; Rantala v. Haish, 132 Minn. 323, 156 N. W. 666. But the presumption is open to explanation. Ward v. Anderberg, 31 Minn. 304, 17 N. W. 630; Chase v. New York Mtg. L. Co. 49 Minn. 111, 51 N. W. 816; Patterson v. Wyman, 142 Minn. 70, 170 N. W. 928. If the $100 paid legitimate expenses and no part thereof was for the use or forbearance of the money, it is excluded from the computation to determine usury. The court found as a fact that this $100 was for the appraisement. In determining whether or not there was usury in Daley v. Minnesota L. & Inv. Co. 43 Minn. 517, 518, 45 N. W. 1100, it was held proper to exclude a certain sum, agreed to be paid the lender for services and expenses in connection with the loan, "which included the preparation of the papers, examining abstract, and investigating the condition and value of the property, and the charge is found reasonable and *bona fide.*" In Stein v. Swensen, 46 Minn. 360, 49 N. W. 55, 24 A. S. R. 234, the reasonableness of the charge is held not

the absolute test, while admitting it may be so unreasonable as to force to the conclusion that it was a mere cover for usury. However, to guard against misapprehension because of expressions in Acheson v. Chase, 28 Minn. 211, 9 N. W. 734, and in Avery v. Creigh, 35 Minn. 456, 29 N. W. 154, the court rejected the proposition that where the amount "agreed on as compensation for the agent's services for examining securities, drawing the papers, and the like, is unreasonable or exorbitant, that of itself will make the transaction usurious," and said [46 Minn. 365]: "To hold that, if the lender and borrower agree upon a sum for compensation to the former for services for which he may charge the latter, it will make the loan usurious, if a jury shall determine that the amount thus agreed on is unreasonable, would go far to disable the parties from making any contract on the subject. They are at as full liberty to make a contract on that subject as any other, provided they do so *bona fide,* and without intent to evade the law. * * * Unreasonableness is not of itself usury, but is only evidence of it." In the instant case we have a finding, backed by a preponderance of the evidence, that the charge was reasonable, and for a service properly chargeable. It should stand.

The judgment is affirmed.

DIBELL, J. (dissenting).

I dissent. With the disposition of the item of $110 for commission of two per cent on the $5,500, I do not disagree. The defendant stated that he paid it, and the plaintiff did not pursue the question nor offer evidence in denial. The finding is sustained by evidence and should stand whatever a reviewing court may think the fact to be.

There is still $110 for which to account. There is expert testimony that a survey of the property might be worth $100, and the defendant claims $100 for his services in making a survey. No such survey was made. The defendant went in his auto from St. Paul to Minneapolis and from there to the land. The ride from Minneapolis to the land took 30 minutes. He gave the land a cursory view, probably for 30 or 45 minutes, returned to Minneapolis, was

satisfied that it was worth $28,000, and verified his estimate by inquiry of a Minneapolis realtor. Just what the additional $10 included is not definitely shown. It is mentioned as "general office expenses." Again it is mentioned as "charged up to the automobile and making out the papers and time that I spent for the Wright county." To my mind the added $100, and probably the $10 in addition, was profit on the loan. The $110 is suggested as an equal division of $220, which was four per cent on the loan, the agents and the lender getting $110 each. The case of Ormund v. Hobart, 36 Minn. 306, 31 N. W. 213, apparently shows that the father of the plaintiff took usury 42 years ago. There is no evidence before us that he did, and if he did evidence of the fact is as irrelevant as would be evidence of the fact that he did not.

STONE, J. (dissenting).

I agree with Mr. Justice Dibell's views except that I suspect even the alleged commission item of $110. But, although nothing was paid to Mattson, and Adelard Michaud on the witness stand was carefully kept away from any question as to his having been paid anything by his cousin, the defendant, the finding on that point is probably decisive because of defendant's testimony that he paid Adelard. Going to the $110 retained by defendant, I find no basis at all for the decision. If we apply our own experience to the testimony of the two realtors who said that it might be worth $100 for defendant to make his casual inspection of this "close in" piece of vacant farm land and then make up his own mind as to value, I think there disappears any semblance of a basis for the conclusion that the decision below, at that point, is "backed by a preponderance of the evidence." Our statute against usury is harsh, too much so; but it is law notwithstanding, and our duty is to enforce it wherever we find, as we have here, a device which is nothing but camouflage for the intentional retention of a usurious bonus by the lender.