# LOUIS POMPLUN v. A. G. HUDSON AND ANOTHER.[1]

April 26, 1929.

No. 27,270.

*Lew C. Church,* for appellants.

*Elliott, Coursolle & Kelly* and *Barney Kaplan,* for respondent.

[1]Reported in 225 N. W. 115.

HOLT, J.

Defendants appeal from a judgment declaring a loan usurious, canceling the assignment of a note and mortgage securing the loan, and enjoining defendants from foreclosing the mortgage.

Plaintiff was the owner of a 160-acre farm in Stevens county, which by deed dated February 25, 1921, he conveyed to Edward Dutcher, who in consideration thereof executed three notes, aggregating $24,800, payable to the order of plaintiff and secured by three mortgages on the farm. Only the note for $12,000 secured by a first mortgage is here involved, the other two mortgages being subordinate thereto. This note and mortgage bore date March 1, 1921. Plaintiff, in need of money, claims to have sought, and on September 3, 1921, obtained, from defendant Deaver a loan of $2,568.20 to be repaid March 10, 1922, in the sum of $3,000, secured by assigning the said note and mortgage to defendant Hudson. Defendants, on the other hand, assert that the note and mortgage were purchased outright by defendant Hudson for $2,568.20, with an agreement that until March 10, 1922, plaintiff might repurchase the same for $3,000.

The findings first filed held the transaction a sale; but on motion for amended findings those filed were stricken, and substituted in place thereof were findings that the transaction was a loan wherein usury was exacted, and as conclusion of law the judgment appealed from was directed. As stated, plaintiff received $2,568.20 from defendants on September 3, 1921, and under the option contract he obtained from defendant Hudson, he had until March 10, 1922, to buy back the note and mortgage for $3,000. Of course if this was a loan it was usurious as a matter of law, for the interest would exceed 30 per cent in order to make the amount required to repay the loan $3,000 six months after it was made. Rantala v. Haish, 132 Minn. 323, 156 N. W. 666.

The finding upon which the judgment rests is that the transaction of September 3, 1921, between plaintiff and defendants was a loan. On the face of the writings which passed between the parties it was a sale. But, "it matters not what device or shift is used, or what

is the form of the transaction, if there is in fact a loan and an illegal rate of interest reserved, there is usury." State Bank of Northfield v. N. W. Security Co. 159 Minn. 508, 509, 199 N. W. 240. In Lukens v. Hazlett, 37 Minn. 441, 443, 35 N. W. 265, it is said: "And there is no device or shift on the part of the lender to evade the statute under or behind which the law will not look in order to ascertain the real nature of the transaction." See also Jackson v. Travis, 42 Minn. 438, 44 N. W. 316; Barry v. Paranto, 97 Minn. 265, 106 N. W. 911, 7 Ann. Cas. 984; Trauernicht v. Kingston, 156 Minn. 442, 195 N. W. 278.

Defendant Deaver is an attorney who for many years has given most of his attention to lending money, handling real estate, buying and selling real estate mortgages and contracts. Defendant Hudson began to work for Mr. Deaver as his stenographer at $40 per month. She has been with him for some 12 years and takes active part in the conduct of the business. It seems that she has now no stated salary but shares in the profits according as Mr. Deaver may determine at the end of each year. The two appear to have a common bank account, but no books or records were adduced to show whose was the $2,568.20 which plaintiff received. Defendants testified it was Hudson's money. The assignment ran to her. Plaintiff denied that she was mentioned when the deal was made with Deaver. There was evidence from which the court could well conclude that the note and mortgage were worth more than their face value in September, 1921; hence it would be unthinkable that the parties intended that there should be a sale at less than a fourth of this value. There were subsequent short extensions at which additional moneys were received by plaintiff, but always the price at which the note and mortgage could be repurchased increased by more than legal interest upon the $2,568.20 plus the additional sums received by plaintiff when such extensions were made. We need not consider these extensions, for if the transaction of September 3, 1921, was a bona fide sale and not a loan, plaintiff cannot prevail even though some or all of the extensions were tainted with usury. On the other hand, if that transaction was a loan, usury inhered; and

the relief decreed by the judgment necessarily must result even though no usury was proved in any extension, for the assignment of the note and mortgage being canceled, those instruments are again the property of plaintiff. So the extensions cannot affect the result of the appeal, although the terms and circumstances thereof might furnish the trial court considerable light on the pivotal fact whether the original deal was a loan or a sale.

We shall not attempt to analyze or recite the evidence any further. It is decidedly conflicting on the main issue stated, which is one of pure fact. If plaintiff's version was accepted by the trial court, no other finding than that of a loan could have been made. That the trial court in deciding the one main fact issue was mindful of the rules of law applicable to usury controversies appears from the memorandum attached to the findings first made, wherein, from Yellow Medicine County Bank v. Cook, 61 Minn. 452, 458, 63 N. W. 1093, this is quoted:

"As usury works an absolute forfeiture of the entire debt, the proofs on which it rests should be scrutinized, and the rule as to the effect of a fair preponderance [of evidence] applied, with more strictness than in ordinary civil actions."

The trial court must likewise have had in mind, when importuned to change his findings, the well settled law that the burden was upon plaintiff to establish usury—the corrupt intent of the parties to agree to give and take more than the statute permits for the use or forbearance of money—and this includes overcoming the presumption that people intend to do only what is lawful. Central B. & L. Assn. v. Lampson, 60 Minn. 422, 62 N. W. 544; Saxe v. Womack, 64 Minn. 162, 66 N. W. 269; Temple v. Davis, 115 Minn. 328, 132 N. W. 257. However, upon the conflicting evidence in this case it was for the trial court to determine whether a fair preponderance thereof warranted a finding that the transaction between the parties was a loan. Hobart v. Michaud, 174 Minn. 474, 219 N. W. 878. We see no legal ground for saying that the finding is not adequately supported.

One assignment of error challenges the finding holding Deaver as one of the parties to the transaction. Aside from plaintiff's testimony that he dealt with Deaver, the latter testified as follows:

"Finally I told him [plaintiff] I would give him $2,600 for the mortgage, and out of it he was to stand the incidental expense of closing the deal, examining the property. He said he would do that providing I would give him an option to buy this mortgage back. I told him I would gladly do that. So we bought the mortgage for $2,600 and gave him an option back. He assigned the note and the mortgage."

This clearly justifies considering Deaver a party with Hudson in the transaction. The statement that plaintiff should stand the expenses is also somewhat significant of a loan rather than a sale.

The judgment is affirmed.