CENTRAL BUILDING & LOAN ASSOCIATION v. HEWS S. LAMPSON and Others.[1]

March 29, 1895.

No. 9239.

### Corporation—Plea of Ultra Vires—Executed Contract.

*Held*, that the plea of ultra vires, either for or against a corporation, cannot be permitted to prevail, in cases of executed contracts, where it would not advance justice, but, on the contrary, accomplish a wrong under the forms of law.

### Building and Loan Association—Usury.

*Held*, that a mutual building and loan association organized under the provisions of G. S. 1878, c. 34, § 109, and doing a local business only, is not subject to the usury laws of the state, where it loans its funds to its bona fide members at a fixed rate of interest, not in itself usurious, and, in addition thereto, receives a premium for such loans, although the premium and stipulated rate of interest together exceed the highest rate of interest allowed by law.

### Verdict Sustained.

Evidence considered, and *held*, that it does not establish a case for the jury upon the question of usury, and that a verdict for the respondent was properly directed.

Appeal by defendants from an order of the district court for Hennepin county, Pond, J., denying a motion for a new trial. Affirmed.

*F. B. Hart*, for appellants.

*F. C. Harvey*, for respondent.

START, C. J. The respondent is a mutual building and loan association, organized in 1885, under the provisions of G. S. 1878, c. 34, § 109 (see G. S. 1894, § 2794). Its business from the beginning has been and is local, and limited to Hennepin county, but no evidence was offered, upon the trial of the action, as to whether or not it had filed with the public examiner the statement, as provided by Laws 1889, c. 236, § 34 (see G. S. 1894, § 2887). The appellants,

[1] Reported in 62 N. W. 544.

Hews S. Lampson and Wesley Neill, on January 22, 1891, applied to the secretary of the respondent for a loan of $2,500, and were informed that, in order to secure the loan, it would be necessary for them to subscribe for the stock of the association, and thereby become members. Such proceedings and negotiations were thereafter had and consummated, on February 3, 1891, that the appellants did subscribe for 100 shares of the stock of the association, and borrowed and received from it $2,500 as a loan, which was evidenced by their bond, also signed as an accommodation maker by their codefendant, Lillie Neill, and secured by a mortgage on real estate, also by pledge of the stock so subscribed for by them. Default was made in the conditions of the bond, and the mortgage was foreclosed by advertisement. The net proceeds of the foreclosure sale were applied in partial payment of the bond, leaving a deficiency of $1,303.48, for the recovery of which this action was brought. A verdict for the respondent was directed, on the trial, for this amount, with interest. The appellants appeal from an order denying their motion for a new trial. The appellants claim that the action of the trial court in directing verdict was error, because (1) the contract was ultra vires; (2) the contract was usurious, within the intention of the parties, or, in any event, the evidence as to usury was such that the question should have been submitted to the jury.

1. The appellants' contention in support of their first point is to the effect that the respondent, while it is organized as a building and loan association, did not transact its business with them, in respect to the loan in question, within the provisions of the statute (Laws 1889, c. 236), but entirely contrary thereto. It is true that the appellants were not members of the association at the time they applied for the loan, and that they had only a leasehold interest in the real estate which they mortgaged to secure the loan. These matters, however, are not material in this case, except as items of evidence on the question whether or not the loan was usurious, because they were a party to the contract, which has been fully executed on the part of the respondent, and they have received from it $2,500 by reason thereof. They are therefore, upon the plainest principles of justice, estopped from urging the plea of ultra vires, which is not permitted to prevail in cases of executed con-

tracts, either for or against a corporation, where it would not advance justice, but, on the contrary, accomplish a wrong, under the forms of law.

2. Does the evidence tend to establish the fact that the loan was usurious, so that the question should have been submitted to the jury? Our answer is, "No." The burden is upon a party interposing the defense of usury to negative by his answer and proof every supposable fact which, if true, would render the transaction lawful. Manning v. Tyler, 21 N. Y. 567. Under this rule, the burden was on the appellants to show that the respondent had not filed with the public examiner the statement as required by Laws 1889, c. 236, § 34, if such was the fact, and it was material in this case. The respondent, then, upon this appeal, is to be regarded as a mutual building and loan association, doing a local business; and, as such, it is not subject to the usury laws of this state by reason of excess of premiums contracted to be paid by its members to it, on a loan to them, over the rate of interest permitted by law. G. S. 1878, c. 34, § 109 (G. S. 1894, § 2218). But, to entitle mutual building and loan associations to the benefit of this exemption from the usury laws, they must conduct their business in good faith, and loan their funds only to bona fide members. They cannot loan their funds to strangers upon usurious terms, practically exclude them from participating in the advantages and profits of the mutual system, in which outlay and return are intimately blended, and then claim the benefit of the statute as a cover for the transaction. Otherwise they would become simply associations of legalized usurers, availing themselves of the privileges and exemptions of the statute, intended only for strictly mutual building and loan associations. If the transaction in question was a loan, pure and simple, and all else a sham and so much machinery to cover up the real transaction, it is void, for the amount agreed to be paid as premium and interest was in excess of 10 per cent. per annum.

It is claimed by the counsel for appellants that the evidence in this case establishes just such a state of facts. We are of the opinion that such is not the legitimate and necessary conclusion to be deduced from the evidence. The mere fact that the appellants were not members of the association when they applied for the loan, and became such members, and subscribed for its stock, for the

sole purpose of securing the loan, has no tendency to prove that such membership and subscription were a cover for usury, for it is perfectly legitimate for a party to join a building association for the express purpose of obtaining a loan. End. Bldg. Ass'ns, § 76. Neither would the mere fact that they informed the secretary of the respondent that they did not intend to carry their stock to completion tend to show that the transaction was not bona fide; for, under the by-laws of the association, they had a right to withdraw and receive their proportion of the profits. While these facts would be of more or less probative force in support of appellants' claim, in connection with other evidence tending to show, directly or indirectly, that the respondent was a party to an agreement that they should not carry their stock to maturity, but should pay their dues and the premiums as a part of the interest on the loan, and repay the whole principal within a limited time, yet there is no evidence from which such an agreement or understanding on the part of the respondent can be inferred. Standing alone, such facts do not justify such inference. It is true that when the appellants made the formal application for the loan, and authorized the secretary to bid for them for the loan, they had not actually subscribed for the stock; but this was done in contemplation of their so subscribing, and when the loan was consummated, the securities delivered, and the money paid to them, they were members and stockholders of the association, and, as such, entitled to all the benefits and privileges thereof, and to share in its profits.

Upon the whole record, it is clear that, on the part of the respondent, the transaction was not simply a loan to strangers, who were to have no share in the profits, and whose membership was a cover for usury, and that a verdict for it was properly directed.

Order affirmed.