A. W. STRICKLAND v. FIRST STATE BANK OF BALATON.[1]

March 6, 1925.

No. 24,441.

**Review on appeal from grant of judgment notwithstanding.**

1. Upon an appeal from a judgment entered pursuant to an order granting a motion for judgment notwithstanding the verdict, where a new trial is not asked, the inquiry is directed to the sufficiency of the evidence tending to support the verdict.

**Verdict sustained.**

2. Record examined and *held* that the evidence was sufficient to sustain the verdict.

**When usury does not exist.**

3. Usury does not exist in the absence of a loan nor in the absence of a contract.

**Usury must exist at the beginning of contract.**

3. The contract must be usurious at its inception.

**When excessive interest is not usury.**

4. It is not usury to pay excessive interest for the past use of money.

**Burden of proof.**

5. Burden is on party claiming usury.

**When usury is question of law.**

6. Usury is a question of fact and must be left to the jury. Where there is no dispute in the testimony and the evidence shows a direct contract whereby, for a loan, the lender exacts a usurious bonus or

[1]Reported in 202 N. W. 727.

excessive interest, the intent to evade the law is presumed and then, only, usury becomes a question of law.

*Headnote 1.   See Appeal and Error, 4 C. J. p. 666, § 2558.
Headnote 2.   See Usury, 39 Cyc. p. 1055.
Headnote 3.   See Usury, 39 Cyc. pp. 925, 947.
Headnote 4.   See Usury, 39 Cyc. p. 993.
Headnote 5.   See Usury, 39 Cyc. p. 992.
Headnote 6.   See Usury, 39 Cyc. p. 1051.

Action in the district court for Lyon county to recover $3,000. The case was tried before Gislason, J., and a jury which returned a verdict for $2,973. Defendant's motion for judgment notwithstanding the verdict was granted. From the judgment, plaintiff appealed. Reversed.

*Evan Hughes*, for appellant.

*A. R. English* and *James H. Hall*, for respondent.

WILSON, C. J.

Action for money had and received. Defense was: (1) That defendant did not receive money from plaintiff; and (2) that if. so the transaction was usurious. The jury found for plaintiff. A new trial was granted, and on the second trial the jury again found for plaintiff who now appeals from the judgment entered pursuant to the order of the court granting defendant's motion for judgment notwithstanding the verdict.

Defendant did not ask for a new trial. Upon such record our attention must be directed to the inquiry as to whether or not there was any competent evidence in the case tending to support the verdict. If so, it must stand. Krause v. C. M. & St. P. Ry. Co. supra, page 102.

The facts are these: In the fall of 1920 plaintiff, living in Mankato, had $5,000 in a local bank on a certificate of deposit maturing in December. S. S. Truax lived in Mankato. S. M. Truax, his son, lived in Balaton and was a brother-in-law of the cashier of defendant bank. The bank needed money. Both of the Truaxes knew this. They were not officers. S. M. Truax went to Mankato

to see his father in an effort to find money for the bank. The father suggested that they see plaintiff, which they did. Plaintiff was told the bank needed money. He told them of his certificate of deposit which was not due. S. S. Truax said that he (Truax) understood that the bank wanted to borrow money. He was asking plaintiff to loan money. Plaintiff told Truax that, on the maturity of the certificate, he would let the bank have $5,000 if Truax would sign the note—if Truax would go as surety on the note. Truax told plaintiff that he thought that he might get more interest than ten per cent, that the bank was willing to pay a little extra, but he did not say how much. Plaintiff answered that he would take whatever they gave him. Soon after the maturity of the certificate, S. M. Truax returned to Mankato with a note bearing date December 15, 1920, due June 15, 1921, for $5,250 with interest at ten per cent. It was signed, not by the bank, but by the two Truaxes and four other men including the president and cashier of the bank. On December 20, 1920, plaintiff met the Truaxes at the local bank and they delivered to him the note for $5,250. He looked only at the signatures, showed the note to the banker who handed it back saying that he supposed it was all right, and then plaintiff put it in his safety deposit box, without looking at the amount thereof, where it remained until due. Plaintiff procured a cashier's check for $5,000, payable to defendant and handed it to S. M. Truax, who, in turn, delivered it to defendant who used it as its own. It claims to have issued a certificate of deposit therefor in the name of the signers on the note. This was apparently without the knowledge of some of the signers and the record is silent as to whom, if anybody, it was ever delivered.

When the note matured the interest due was $250. S. S. Truax gave plaintiff his personal check for $250 drawn on defendant. It was paid by defendant, but never charged to the account of the drawer. About this time defendant sent plaintiff $250. He kept both items, but did not credit them, or subsequent interest received, anywhere.

On June 9, 1921, plaintiff wrote defendant that he had received the letter it had written to Truax and he told it that it could have the

$5,000 at eight per cent. This was the first communication or contract between plaintiff and defendant or any of its officers. He received a letter on the bank letter head over the signature of A. M. Moore, Cashier, in which it is said: "Your letter received stating that we could have your money at eight per cent for which we thank you and we will accept of your offer." In this letter the $250, above mentioned, was inclosed. A new note was then given plaintiff for $5,000 dated June 15, 1921, and due December 15, 1921, with interest at eight per cent and signed by the same persons.

On December 15, 1921, plaintiff went to defendant at Balaton and was paid $200 as six month's interest on the $5,000 note and, pursuant to arrangements then made, defendant sent to the Mankato bank for plaintiff $2,000 and a new note for $3,000 dated December 15, 1921, due June 15, 1922. This note is still in existence.

Plaintiff testified that he did not get the first note for the cashier's certificate. Prior to the letter in which he mentioned eight per cent interest plaintiff never mentioned any rate of interest. S. S. Truax told his son that he might be able to induce plaintiff to make a deposit. Truax initiated the negotiations with plaintiff. He got none of the money, and did not expect it, but he signed the note. If the note evidenced a loan to the signers thereon, Mr. Truax was one of the borrowers. Moreover Truax, in testifying about paying the $250 on the maturity of the first note, said this: (italics ours)

"I saw the note called for $5,250. Why, said I, you didn't let *them* have that much money * * * *they* got only $5,000 * * * I * * * lifted the old note and gave him this new one * * * the *bank* had asked me to sign this new one. * * * He (plaintiff) was to deposit with the bank $5,000."

There is other evidence in the case which with this would have supported a verdict for defendant. For present purposes we have pointed out the important things in the evidence most favorable to plaintiff. We are of the opinion that the verdict rendered for plaintiff was amply sustained. It may be said by the jury that the bank had in its possession at the commencement of this suit the money claimed by plaintiff and that the bank was the sole beneficiary of the consideration for which the note was given and that the notes

were given him as collateral security for the return of the money. Such is plaintiff's claim. The verdict was for $2,973 which indicates that the jury credited the extra $250 on the $3,000 and then added interest. This was permissible and proper upon the theory that the bank held money belonging to plaintiff. They could find that plaintiff had received this amount without any agreement on his part for its payment and he had not given defendant credit therefor.

We cannot have usury without the loan of money nor without a contract. To be usurious the contract must be so when made. Egbert v. Peters, 35 Minn. 312, 29 N. W. 134; Morse v. Wellcome, 68 Minn. 210, 70 N. W. 978, 64 Am. St. 471; Patterson v. Wyman, 142 Minn. 70, 170 N. W. 928. It is not usury to pay excessive interest for the past use of money. Daniels v. Wilson, 21 Minn. 530; Morse v. Wellcome, supra. One who voluntarily pays usurious interest may not maintain an action to recover it, while one against whom a usurious contract is sought to be enforced may invoke the statute in his defense. The usury statute is a shield but not a sword. The burden is upon the party interposing the defense of usury to negative every supposable fact, which, if true, would render the transaction lawful. Central B. & L. Assn. v. Lampson, 60 Minn. 422, 62 N. W. 544. The contract of usury, of course, may be proved by conduct, as well as by words, and when there is a conflict, as here, as well as circumstances which tend to support one side or the other, usury is a question of fact and must be left to the jury. Elwell v. Lund, 102 Minn. 166, 112 N. W. 1009, 1067; Chase v. New York M. L. Co. 49 Minn. 111, 51 N. W. 816; Dunnell, Minn. Dig. § 9994. The court in its charge to the jury properly submitted the case. Where there is no dispute in the testimony and the evidence shows a direct contract whereby, for a loan of money, the lender exacts a usurious bonus or excessive interest, the intent to evade the law is presumed and then, only, usury becomes a question of law. Rantala v. Haish, 132 Minn. 323, 156 N. W. 666; Dunnell, Minn. Dig. § 9994. The record in this case does not meet this requirement.

Upon the record there was an opportunity for the jury to have found for the plaintiff upon the theory that the extra $250 was paid for the past use of money without any previous agreement therefor. Had it done so the verdict should have been for $250 more. It is therefore evidenced that the conclusion reached is based upon the claim that the bank received plaintiff's money and that the transaction was free from usury. The evidence supports the verdict.

Reversed with directions to enter judgment for the plaintiff upon the verdict.