HENRY C. CLAUSEN AND ANOTHER v. EDWIN S. SALHUS AND OTHERS.[1]

February 26, 1932.

No. 28,795.

*Hermon W. Phillips,* for appellants.

*Arthur C. Wangaard* and *C. F. Granrud,* for respondents.

[1]Reported in 241 N. W. 56.

OLSEN, J.

Plaintiffs appeal from the judgment in favor of defendants.

The action was brought in the municipal court of Minneapolis to recover possession of real property, a lot in Minneapolis on which there is a building, claimed to be wrongfully detained by the defendants.

Plaintiffs held a mortgage upon the property, which had been duly foreclosed and the year for redemption had expired. The defense was that the mortgage was usurious and that therefore the plaintiffs had acquired no title by the foreclosure. The court found the mortgage usurious and invalid and found plaintiffs not entitled to recover possession of the property.

The question of usury involves consideration of a long course of dealing between defendants and one Hopkins and between defendants and plaintiffs. It involves consideration of a number of deeds, contracts, and mortgages. It is difficult, from the record here presented, to state in an orderly way the various transactions involved.

In substance it appears that in 1921 or 1922 one Goodge was the owner of the lot. Whether there was then any building thereon does not appear. Goodge at that time sold the lot to defendants on contract. At about the same time a mortgage for $1,700 was placed on the lot, which defendants were to pay as part of the purchase price.

In 1923 Goodge conveyed the lot to Hopkins, subject to the $1,700 mortgage and to the contract to defendants, and at the same time assigned to Hopkins the vendor's interest in the contract.

In 1923 defendants desired and undertook to erect a building on the lot. They consulted with Hopkins, and he agreed to and did assist them in financing the building operation. Defendants deeded the lot to Hopkins. A first mortgage of $5,000 and a second mortgage of $2,200 were placed on the property, out of which the building operation appears to have been financed. Hopkins testified that he thereafter made several interest payments on the first mortgage. Neither the interest rate nor the amount of these payments is

shown. The original $1,700 mortgage was taken up and paid by Hopkins on June 28, 1923. The amount paid appears to have been $1,800.

In 1925 Hopkins gave defendants a contract for deed, wherein the defendants assumed the $5,000 first mortgage and the $2,200 second mortgage and agreed to pay to Hopkins, in addition thereto, $1,800 on November 1, 1927, with interest at seven per cent per annum.

In 1926 the second mortgage of $2,200 had been foreclosed and the time to redeem was about to expire. Hopkins furnished the money to redeem by the payment of $1,975.08. He then, on October 28, 1926, gave the defendants a new contract, whereby defendants assumed the first mortgage for $5,000 then on the premises and agreed, in addition thereto, to pay to Hopkins $4,190, with interest at the rate of seven per cent, in monthly instalments of $50 up to December 10, 1927, and thereafter at $75 per month until paid. It is this contract in which usury is claimed to have entered and to have been thereafter carried forward into plaintiffs' later mortgage.

On June 3, 1929, the first mortgage for $5,000 was taken up and a new first mortgage for $4,500 given by Hopkins and the defendants to a life insurance company. So far as appears, Hopkins remains personally liable to the holder of this mortgage.

On July 17 or 18, 1929, Hopkins deeded the premises to plaintiffs, Henry C. Clausen and Ella Clausen, and at the same time assigned to them his interest as vendor in the contract of October 28, 1926.

On December 26, 1929, a new deal was made between defendants and the plaintiffs, Henry C. Clausen and Ella Clausen. On that date the contract of October 28, 1926, was canceled or taken up in some way. Plaintiffs deeded the premises to the defendants and received back a note and mortgage for $3,093.66, being for the amount then figured as owing on the contract of October 28, 1926. This mortgage and the note secured thereby bear interest at the rate of seven per cent, payable in instalments of $40 per month, commencing January 26, 1930, and until July 26, 1935, at which time the entire balance becomes due. This mortgage was fore-

closed and the premises bid in by plaintiffs for the amount of the mortgage debt, on August 4, 1930, and the time for redemption expired about August 4, 1931. Plaintiffs then brought this action to recover possession.

There was also evidence that Hopkins had paid $200 or $300 taxes on the property prior to the time he transferred his title to plaintiffs in 1929.

The testimony of defendant Edwin Salhus, hereinafter referred to as defendant, is indefinite and unsatisfactory in many respects. He admits that Hopkins, during the time from 1923 to 1929, was financing and taking care of mortgages and claims against the property for him; that in 1923 Hopkins furnished $1,800 to clean up debts against the property so that a first mortgage for $5,000 could be placed thereon; that a second mortgage of $2,200 was given to a construction company for additional building costs; that this mortgage was foreclosed in 1925 and that Hopkins furnished $1,975.08 to redeem therefrom. Defendant presented no account or receipts showing any payments made by him on principal or interest on the mortgages or on any of the contracts with Goodge or Hopkins. He says he "thinks" payments were made. He denied having given the $1,700 mortgage until his signature thereon was shown to him. Hopkins, called as a witness, also had no records and was unable to give figures or dates in most instances.

Defendant and Hopkins agree however that at the time the contract of October 28, 1926, was made they figured up the amount supposed to be owing to Hopkins and that they agreed upon the amount to go into the contract. But defendant testified that Hopkins said to him: "Now, if I am taking up this mortgage for you that is worth something. * * * I want $350 for taking up that second mortgage"; that defendant said: "That is all right"; that thereupon this $350 was included in the $4,190 stated in the contract. Defendant is corroborated to some extent by the attorney who drew the contract and who testified that there was a balance due on the old contract, and the amount paid that day by Hopkins to redeem from the mortgage sale, and another item which he believes was some expense; that he figured up the items he had knowl-

edge of and found them $350 less than the figures given him by the parties; that he called the attention of the parties thereto and was told by one of them that this was to go to Hopkins for the trouble he had been to in getting this money; that he heard none of the conversation leading up to it and knows no more about it. Hopkins denies that there was anything included in the 1926 contract except the amount then owing him under the prior contract, the $1,975.08 paid for the redemption, and an item of about $30 expense paid by him. He denies that any additional sum of $350 was spoken of or included in the new contract.

Coming to the time when plaintiffs' mortgage and note were given by defendants in December, 1929, defendant was asked, on cross-examination, what was owing by him on these transactions to plaintiffs at that time. He stated he did not know exactly and said:

"I think that specifies in the mortgage."

Q. "Was the amount called for in the mortgage then due?

A. "Yes."

He was asked again what he then owed and answered: "Twenty-nine hundred and something, I think." He gave no further explanation of this testimony.

The usury law of this state is highly penal in its effect. The evidence to prove usury should be scrutinized with more strictness than in ordinary civil actions. Yellow Medicine County Bank v. Cook, 61 Minn. 452, 63 N. W. 1093; Saxe v. Womack, 64 Minn. 162, 66 N. W. 269; Temple v. Davis, 115 Minn. 328, 132 N. W. 257.

The burden is upon the party interposing the defense of usury to negative by his proof any hypothesis reasonably drawn from the evidence which would render the transaction lawful. Central B. & L. Assn. v. Lampson, 60 Minn. 422, 424, 62 N. W. 544; Strickland v. First State Bank, 162 Minn. 235, 239, 202 N. W. 727.

It is not usury to pay excessive interest for the past use of money. Daniels v. Wilson, 21 Minn. 530; Morse v. Wellcome, 68 Minn. 210, 70 N. W. 978, 64 A. S. R. 471; Strickland v. First State Bank, 162 Minn. 235, 202 N. W. 727.

It cannot be held to be usury to include in a note or obligation a sum in payment of past services rendered by the payee to the maker, unless the amount thereof is unreasonable and included as a cloak for usury. Thomas v. Miller, 39 Minn. 339, 40 N. W. 358; Swanstrom v. Balstad, 51 Minn. 276, 53 N. W. 648; Blanchard v. Hoffman, 154 Minn. 525, 192 N. W. 352; Bowman v. Kohlhase, 170 Minn. 8, 211 N. W. 828.

It is undisputed that before the contract of October, 1926, now claimed as usurious, was made, Hopkins had performed many valuable services for defendants. He had assisted defendants with his services and credit to make it possible for them to build. He had advanced the money to pay up prior encumbrances so that money could be obtained for building. When the second mortgage was foreclosed he personally borrowed and furnished the money to redeem. He had furnished money and rendered services to carry the property for the defendants for some three years, partly for his own protection, it is true; but at the time the building operations were commenced he had little, if any, interest in the property and could have taken over and enforced the then existing mortgage or have permitted the holder thereof to do so. If we assume that $350 for services was included in the 1926 contract, the defendants have failed to show that the services were not of that value, and we find the evidence insufficient to show that there was any intent to exact usury or that this was a cloak for usury.

It is significant that when in December, 1929, the defendants gave the note and mortgage in question to these plaintiffs no claim of usury or error in the amount owing was mentioned or claimed by defendants. If there was usury in the prior contract, it was well known to them at that time. They consented to a discharge or cancelation of the alleged usurious contract, accepted a deed from plaintiffs for the property, and voluntarily gave plaintiffs a note and mortgage for $3,093.66, which amount defendant Edwin Salhus testifies, on cross-examination, was then due and owing.

As pointed out, the evidence is very incomplete and defendant's evidence indefinite and contradictory. Even if by picking out some

portions of the evidence the finding of usury can be technically sustained, we feel that taking the evidence as a whole it is not reasonably sustained. It should be possible for both parties to present clearer and more convincing proofs, and a new trial should be had.

Judgment reversed.