HENRY C. CLAUSEN AND ANOTHER v. EDWIN S. SALHUS AND OTHERS.[1]

December 23, 1932.

No. 29,328.

*Hermon W. Phillips,* for appellants.
*Arthur C. Wangaard* and *Carl F. Granrud,* for respondents.

[1]Reported in 246 N. W. 21.

HILTON, J.

Action in municipal court to recover possession of improved real estate claimed by plaintiffs (appellants) to be unlawfully detained by defendants (respondents). Plaintiffs' claimed right to the possession of the premises was based on a foreclosure sale under a mortgage owned by them and from which sale no redemption had been made. The defense was usury, claimed to have been exacted by one Hopkins in a transaction relative to the premises wherein a contract for a deed was executed. Plaintiffs succeeded to Hopkins' rights. If there was such usury plaintiffs could not prevail.

■ This case was previously tried in municipal court before a judge thereof without a jury. The court found that the mortgage at the time of its execution and delivery was usurious and void. The judgment therein was "that the defendants are not guilty as charged in the complaint and * * * that plaintiffs take nothing by this action." The case was appealed to this court, and the judgment therein was reversed. Clausen v. Salhus, 185 Minn. 403, 241 N. W. 56. The case was retried to a jury, which found a verdict in favor of the defendants. Pursuant thereto judgment was entered adjudging "that the facts alleged in the complaint are not true and that the said defendants are not guilty." From that judgment this appeal is taken. The facts as found in the previous opinion need not here be restated; except as to two important matters they were practically the same at the second trial. As to these the evidence was amplified and made more certain.

The law of this state relative to usury is clearly stated in the opinion above referred to.

A $350 item at both trials was an important factor. It was the amount claimed by defendants to have been exacted from them by Hopkins in excess of the amount actually loaned them. The contract which was claimed to be usurious bore interest at the rate of seven per cent, one per cent less than the legal rate. It was stipulated at the trial that the usury, if any, would be $201.53, the amount in excess of the lawful eight per cent. The $350 is referred to in the previous opinion, and the claims of the respective parties

thereto are therein recited. At that trial the excess was claimed to have been compensation for services renderd by Hopkins in financing various enterprises of defendants. No evidence was then introduced nor was there at the second trial showing that the services were not of the value of $350. However, at the second trial plaintiffs made much of and relied largely upon certain interest payments made by Hopkins on a first mortgage, for which mortgage debt both Hopkins and defendants were liable.

In the first opinion it is stated [185 Minn. 404] :

"Hopkins testified that he thereafter [before the making of the contract in question] made several interest payments on the first mortgage. Neither the interest rate nor the amount of these payments is shown."

At the second trial Hopkins testified in detail as to two $150 interest payments. Salhus admitted that such interest payments were made by Hopkins, but testified that about the time they were made defendant reimbursed Hopkins therefor with cash which he borrowed from one Swanson. Swanson testified that at the times stated he loaned money to Salhus. Hopkins denied that such payments were made to him.

There was only one $350 item included in the contract. There could not be one for that amount on account of interest payments made and another like one for services. Hopkins at the second trial testified that he knew of the two claimed interest payments at the time of the first trial, but did not remember when they were made or the amount thereof. The shift of position undoubtedly influenced the jury in finding adversely to plaintiffs.

The main question in the case was whether the usurious bonus had really been exacted. The amount stated in the contract in question was to cover the amount of defendants' monetary indebtedness (loan) to Hopkins arising out of their transactions, and the additional $350, whatever that was for. The total amount was made up of a number of items.

Salhus and Hopkins went to the office of an attorney, Culhane, to have the contract (claimed to be usurious) drawn. Culhane was

given a number of figures, which included the balance on the contract, the amount Hopkins had advanced on account of a second mortgage, and an item for expense that Hopkins had been put to in obtaining the money to take up that second mortgage. It had been stated to Culhane that the amount to be inserted in the contract was $4,190. His testimony was that he added up these amounts three or four times and found that the contract called for $350 more than what the figures came to. He testified:

"I said, 'There is a difference here of $350 between your figures and mine,' and Mr. Hopkins said, 'That is right' or 'that is correct' or something to that effect. 'That is what Ed is paying me' or 'that is the bonus for my trouble.'"

Salhus' testimony is to the same effect. Hopkins flatly denied that there was any such conversation. Salhus testified that prior to going to the attorney's office, when they were negotiating for the loan, Hopkins said to him:

"'Now, Ed, I will take up that second mortgage for you, and I will put it in my contract and make a new contract,' and I said, 'All right, that will be fine,' and when we went down in the car, on the way downtown he said, 'Now, Ed, if the loan shark—if you get this money from the loan shark, they would get every drop of blood out of your body, they are kind of hard on a small fellow, but' he said, 'it ought to be worth something to you,' and I said, 'Whatever is fair is fair enough to me,' so he said, 'How would $350 be,' and I said, 'That is fair enough.'"

Hopkins also denied this conversation.

It appeared from the evidence that Hopkins kept books of account in which he entered items having to do with his transactions with Salhus. One of these items was for $10 which he said he loaned to Salhus. The latter denied any such loan. In this book there are no references to either of the claimed $150 payments. This circumstance probably appeared significant to the jury.

Salhus testified that in addition to the $350 added to the amount that he really owed Hopkins, he, Salhus, agreed to make and give

him an overcoat, valued at $75. An overcoat was made, given to, and retained by Hopkins. It was an exhibit in the case. Hopkins admitted getting the overcoat but said that it was given by Salhus to him and was not worth over $10, and was, in fact, to pay the $10 that he claimed to have loaned Salhus.

It cannot be said, taking into consideration all of the conflicting evidence, that the jury was not warranted in finding as it did. The case made by defendants in many essential features was stronger for them than it was at the previous trial. This is particularly true when attention is given to the evidence relative to the repayment by Salhus of the $150 interest payments made by Hopkins. The case has been tried twice, first to a court without a jury and later to a jury. The result was the same in each trial. We hold that the evidence reasonably warranted the conclusion reached by the jury.

■ At the opening of the trial, by stipulation certain exhibits of plaintiffs establishing their record title to the premises involved were admitted in evidence, and it was agreed that the time of redemption from the mortgage foreclosure sale had expired and no redemption made. Counsel for plaintiffs then explained the exhibits to the jury and rested. The trial then proceeded by introduction of evidence for defendants, followed by that of plaintiffs in rebuttal. The question then arose as to which should have the closing argument to the jury. In deciding this question the court stated:

"The court will rule, in view of the fact that defendants concede that plaintiffs are entitled to the possession of the premises as alleged in the complaint, except for the defense of usury, and in view of the fact that the affirmative is upon the defendants to establish the question of usury, that the defendants shall have the closing argument to the jury."

This ruling was excepted to. The ruling was proper. G. S. 1923 (2 Mason, 1927) § 9295(4), provides:

"* * * the defendant shall open and the plaintiff close the argument to the jury: Provided, that if the defendant have the

affirmative of the issue to be tried the foregoing order of trial shall be reversed."

Appellants claim errors in the charge, but we find such claim without merit. The court fairly submitted the issues to the jury. It correctly charged as to the law of usury and the degree of proof necessary to the establishment thereof. We find no reversible errors.

Affirmed.